**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lester SLOMAN (89–4056), Paul Bauer (89–4057), Defendants–Appellants.**

**Nos. 89–4056, 89–4057.**

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1990.

Decided July 27, 1990.

John M. DiPuccio (argued), Office of the U.S. Atty., Cincinnati, Ohio, for U.S.

H. Fred Hoefle (argued), Peter W. Swenty (argued), Cincinnati, Ohio, for Lester Sloman.

Mott V. Plummer (argued), Newport, Ky., for Paul David Bauer.

Before MILBURN and NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.

LIVELY, Senior Circuit Judge.

The defendants were convicted by a jury of conspiracy to commit mail fraud and of concocting and carrying out a scheme and artifice to defraud an insurance company. 18 U.S.C. § 371; 18 U.S.C. §§ 1341, 1343 and 2. The district judge sentenced Sloman to concurrent prison terms of 27 months, with three years of supervised release. The defendants raise several issues on appeal.

I.

In 1986 Bauer was a claims adjuster for Aetna Insurance Company and Sloman was an adjuster for Crawford & Company, an independent adjusting firm. Aetna employed Crawford in the Cincinnati area to adjust claims that its in-house adjusters could not handle for any reason.

Antonio Cherot bought a new cabin cruiser in April 1986, and insured it with Aetna for its full value, $140,000. The boat was damaged by fire on May 7, 1986, while docked at a marina in Cincinnati. Cherot made a claim with Aetna and the matter was assigned to Bauer for adjustment. Bauer advised his supervisor that he did not have sufficient experience with boats to make an appraisal. Bauer called Sloman and on May 9 they inspected the boat together. Bauer then suggested to his supervisor that Aetna hire Sloman to make the appraisal.

On May 15 Sloman advised Aetna that the boat was a constructive total loss. He submitted a damage report indicating that it would cost more to repair the boat than the boat was worth, less salvage. In fact, many of the items listed on the report were not damaged and did not need repair or

replacement. On the basis of Sloman's report, Aetna settled the claim for $140,000 on May 22. Aetna then requested Sloman to obtain salvage bids, which he did. Included among the bids submitted by Sloman were two that were fabrications. The purported bidders testified that they had not submitted bids and that the signatures on bids bearing their names were forgeries.

Aetna sold the boat to the high salvage bidder for $34,001. The successful bidder, Bob Ratermann, testified at trial that Sloman furnished the entire purchase price, but that title was kept in Ratermann's name. The boat was then towed to a different marina and Bauer, whose alleged lack of experience with boats led to the selection of Sloman, single-handedly repaired the boat. Bauer later told an FBI agent that he repaired the boat in his spare time, spending about $5,000, which was furnished by Sloman, plus about 100 hours of labor.

After the repairs were completed, Sloman and Bauer used the boat frequently. Bauer entertained his girlfriend on the boat and she testified that he and Sloman appeared to have total use of the boat. The boat worked well and Bauer had no problems operating it. Except for the title there was no indication that Ratermann had any interest in the boat.

There was an abundance of evidence that Sloman greatly inflated the estimated cost of repairs. One witness who examined the electrical system, where the fire started, stated that he found evidence of a very small fire. He was surprised to learn that Sloman considered the boat a total loss. Another witness, who qualified as an expert on the cost of repairing boats, testified that the cruiser could have been repaired for about $6,500. He stated that the required repairs consisted of "basically a cleaning job," with some electrical wiring to be replaced. After such minimal repairs, this witness estimated the boat's value at $120,000 to $130,000.

## II.

■ Both defendants argue on appeal that the evidence was insufficient to support the guilty verdicts and that they were entitled to judgments of acquittal. We disagree. Viewing the evidence most favorably to the government, as we must following conviction, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the jury could infer the existence of a conspiracy between Bauer and Sloman to "rip off" Bauer's employer, Aetna. There was little or no dispute concerning Bauer's and Sloman's actions. Both acknowledged that they acted unethically, but denied any criminal intent. The circumstantial evidence pointing to a conspiracy and scheme to defraud was clearly sufficient to require denial of the defendants' Rule 29 motions for acquittal and to support the jury's verdict.

## III.

### A.

Sloman also seeks reversal on the ground that the district court abused its discretion by permitting the prosecutor to use evidence of a 17–year–old conviction for impeachment purposes. Rule 609(b) of the Federal Rules of Evidence provides:

> (b) **Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

As he did in the district court, Sloman argues that the district judge erred in several respects. First, the prosecution did not give advance written notice of intent to use the prior conviction as required by the

rule. Second, he argues that the district court erred in finding that the prejudicial effect of the evidence did not outweigh its probative value.

■ The government did not give the required notice of intent to use the conviction until after Sloman had taken the witness stand. The district court overruled the defendant's objection on the grounds that Sloman's counsel did not decide that Sloman would testify until after the trial was underway, and that defense counsel was not taken by surprise since he knew of the prior conviction. The purpose of the notice provision is to prevent surprise. Since defense counsel was aware of the conviction and knew that Sloman would be subject to cross-examination if he waived his constitutional right to not testify, the defendant was not prejudiced by the late notice.

After being informed of the government's intention to cross-examine Sloman about a prior conviction, the district court conducted a hearing out of the presence of the jury. The evidence demonstrated that the 1972 conviction involved dishonesty (knowingly transporting stolen vehicles), was occupationally related (Sloman operated a body shop at the time), and that Sloman was 32 years old at the time of the offense. The court found that the previous conviction was probative of the question of intent, and that its probative value outweighed any prejudicial effect that its disclosure might have.

Following the hearing the prosecutor asked Sloman if he had ever been convicted of a felony and received the answer, "Yes." That was the end of the matter. The prosecutor asked no further questions about the conviction and did not refer to it in summation.

## B.

Rule 609(a)[1] establishes a general rule that evidence of prior felony convictions is admissible for impeachment purposes if the probative value of admitting the evidence outweighs its prejudicial effect to the defendant or if the offense involves dishonesty or false statement, regardless of the punishment. Thus, it is a rule of inclusion, not of exclusion. The requirement that the evidence be elicited during cross-examination and the conditions contained in subsection (b) and other subsections not in issue here, place limitations on the use of such evidence that is otherwise admissible.

Sloman placed his credibility in issue by denying that he conspired with Bauer and Ratermann to defraud Aetna. He maintained that he had no intent to commit a crime, but that he honestly believed the boat was a total loss. While admitting that he acted unethically in purchasing the boat, he sought to have the jury believe he paid the full salvage value, albeit acting surreptitiously in doing so. He testified that Bauer just spliced some of the electrical parts that should have been replaced and that the boat was so soiled by soot and smoke that it was no longer desirable.

■ Given Sloman's decision to testify, he was subject to impeachment on cross-examination. Under Rule 609(a) if the prior conviction is less than 10 years old and is for a crime involving dishonesty, evidence of the conviction is automatically admissible without regard to the probative value/prejudicial effect balancing test. *United States v. Glenn*, 667 F.2d 1269, 1272 (9th Cir.1982). The district court was required to balance prejudice against probative value in this case only because the prior conviction was more than 10 years old. Rule 609(b).

After considering successive versions of Rule 609(b) in Congress, and as finally promulgated by the Supreme Court, we

1. F.R.Evid.Rule 609(a) provides: (a) **General rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

stated in *United States v. Sims*, 588 F.2d 1145, 1147 (6th Cir.1978) that "[t]he legislative history [of Rule 609(b)] further demonstrates an intent that evidence of convictions more than ten years old should be admitted very rarely and only in exceptional circumstances." We then outlined the procedure to be followed in conducting the hearing, which "need not be extensive," *Id.* at 1149, and listed "[s]ome of the factors" to be considered by the judge in making the probative value/prejudicial effect determination as identified in *Gordon v. United States*, 383 F.2d 936, 940 (D.C.Cir.1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968). *Id.* These factors are:

1. The impeachment value of the prior crime.
2. The point in time of the conviction and the witness' subsequent history.
3. The similarity between the past crime and the charged crime.
4. The importance of the defendant's testimony.
5. The centrality of the credibility issue.

### C.

█ The district court conducted a hearing and stated its reasons for admitting the evidence. Defense counsel did not request an admonition to the jury that it could consider the evidence for impeachment purposes only. The district court considered the factors listed in *Sims*, plus several not so listed, such as Sloman's age at the time of the 1972 conviction. While we find no exceptional circumstances calling for admission of the evidence in the present case, we are convinced that admission of the evidence did not constitute reversible error.

█ A court has broad discretion to admit evidence of prior convictions after conducting the probative value/prejudicial effect inquiry. Even if this court concludes that the district court's ruling was erroneous, the defendant must demonstrate substantial prejudice to be entitled to a reversal. *United States v. Bagley*, 772 F.2d 482, 487 (9th Cir.1985), *cert. denied*, 475 U.S. 1023, 106 S.Ct. 1215, 89 L.Ed.2d 326 (1986).

We find no such prejudice here. The evidence of Sloman's participation in the crime was overwhelming, and his explanations were totally unconvincing. The admission of evidence of the 17–year–old conviction did not unfairly tip the scales in favor of the government, creating a due process violation as Sloman argues on appeal.

### IV.

Both defendants challenge their sentences as well as their convictions on appeal.

### A.

█ The district court sentenced Sloman under offense level 16, criminal history Category I, with a sentencing range of 21 to 27 months. The base offense level for crimes involving fraud and deceit is 6. The district court added 6 levels because the loss exceeded $100,000, 2 levels because the crime involved more than minimal planning, and 2 levels because Sloman's participation involved the use of a special skill. See Guidelines §§ 2F1.1(a), (b)(1)(G), (b)(2) and 3B1.3.

Sloman contends that the district court erred by increasing the offense level by 2 levels both for more than minimal planning and for the use of a special skill. He maintains that after the initial appraisal, his actions that led to his ownership of the boat involved only his special skill as an insurance adjuster and no planning was required. The district court heard all the evidence and found that the entire scheme involved more than minimal planning as well as the utilization of Sloman's special skill as an adjuster. These were separate components of the scheme, both of which contributed to its success. The district court's conclusion that the sentencing guidelines mandate two 2-level increases in this case is based on findings of fact that are not clearly erroneous. 18 U.S.C. § 3742(e); *United States v. Duque*, 883 F.2d 43, 44 (6th Cir.1989). We find no error in the two 2-level increases.

Sloman also argues that the district court erred in adding 6 levels upon finding that the loss to Aetna exceeded $100,000. The district court explained its reasoning at the sentencing hearing, and the record supports its conclusion. Aetna paid $140,000 to the boat's owner, and received $34,001 from the highest salvage bidder—a difference of $105,999. "Loss" is defined in the commentary to § 2B1.1 of the guidelines as "the value of the property taken, damaged, or destroyed." Sloman argues that since the boat was damaged in the fire, Aetna would have been required to pay at least $90,000 to the owners for repairs and depreciation. Aetna paid $140,000 because Sloman misrepresented the damaged boat as a constructive total loss. Thus, according to Sloman, Aetna's loss resulting from fraud did not exceed $50,000.

This is an ingenious argument, but it won't fly. Sloman's fraudulent acts prevented Aetna from settling the claim for $90,000 or any other amount based on partial damage rather than a constructive total loss. That fraud caused Aetna to suffer a net out of pocket loss of $105,999, and this was the proper basis for determining Sloman's sentence.

### B.

The district court sentenced Bauer on the basis of a combined offense level of 12–6 for the base offense and 6 for the amount of the loss. Like Sloman, Bauer argues that the amount of the loss was less than $100,000, and we reject that argument for the reasons stated above.

Bauer also contends that he was entitled to either a 4–level decrease as a minimal participant or a 2–level decrease as a minor participant in the criminal activity. Guidelines § 3B1.2(a) and (b). The evidence clearly supports the district court's rejection of this contention. Bauer launched the fraudulent scheme by withdrawing as adjuster in the case and then suggesting Sloman's employment. Furthermore, he made the repairs to the fraudulently acquired boat and reaped the rewards of his efforts in unrestricted use of the boat after it was repaired. He was neither a minimal nor a minor participant.

Finally, Bauer asserts that the district court erred by not granting him a 2-level decrease for acceptance of responsibility. Guidelines § 3E1.1. Bauer expressed his regret for what had happened with respect to the boat, but he never admitted any fraudulent intent. Although he gave statements to Aetna representatives and an FBI agent, he always maintained that he acted innocently and failed to report the scheme as carried out by Sloman only because it had gone too far. He did not accept responsibility within the meaning of the guidelines.

### C.

In a supplemental brief filed the day before oral argument, Sloman argued that he was erroneously sentenced for conspiracy under the guidelines. The indictment charged a conspiracy running from about May 9, 1986, until about September 7, 1988. The sentencing guidelines became effective on November 1, 1987. Sloman argues that all of the overt acts alleged in the indictment occurred before November 1987, and that he should have been sentenced under pre-guidelines standards.

This argument is not worthy of counsel in this case. The record of the sentencing hearing contains a statement by Sloman's trial counsel that "the substantive counts merge with the conspiracy counts which extended past November 1, 1987." Counsel made this statement to explain his agreement with the district judge's announcement that he would proceed to sentence "as though it were all guidelines." An attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course. Sloman waived any objection he might have to being sentenced under the guidelines.

Furthermore, the district court properly sentenced under the guidelines. We agree with those courts that have held the guidelines applicable to "straddle crimes"—those continuing offenses begun

before November 1, 1987, but not completed until after that date. *United States v. Story*, 891 F.2d 988, 992–96 (2d Cir.1989); *United States v. Terzado–Madruga*, 897 F.2d 1099, 1122–24 (11th Cir.1990). As counsel recognized at the sentencing hearing, the conspiracy extended beyond November 1, 1987, making this a "straddle" case.

The convictions and sentences are affirmed.