940 F.2d 663
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee/Cross-Appellant,
v.
Mark T. GRECNI, Defendant-Appellant/Cross-Appellee.
 Nos. 90-3483, 90-3571.
 United States Court of Appeals, Sixth Circuit.
 July 30, 1991.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-appellant Mark T. Grecni (Grecni) appeals his conviction for: (1) possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1), and (2) possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c). The United States (the government) cross-appeals the sentence imposed on Grecni. For the reasons that follow, we affirm Grecni's conviction, but we vacate the sentence imposed on him for possession with intent to distribute marijuana and remand.
 
 I.
 
 2
 A federal grand jury charged Grecni with possession with intent to distribute marijuana in violation of 21 U.S.C. Sec. 841(a)(1) (Count I), and possession of a firearm during a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c) (Count II). In his defense, Grecni moved to suppress statements that he made while in police custody after his arrest and to suppress physical evidence seized from him and from his automobile at the time of his arrest. The motions were denied. Grecni also filed a notice of defense based on public authority, pursuant to Fed.R.Crim.P. 12.3, stating that he intended to "rely on the defense of actual or believed exercise of public authority on behalf of a law enforcement agency at the time of the alleged offense."
 
 
 3
 The case was tried before a jury, which convicted Grecni of both counts. Grecni filed a motion for judgment of acquittal, which was denied. The district court sentenced Grecni to 33 months imprisonment on Count I, the minimum sentence under the federal sentencing guidelines, and 60 months imprisonment on Count II, to be served consecutively.
 
 II.
 
 4
 In March 1988, Grecni was arrested at the Dallas-Fort Worth Airport for possession of 28 pounds of marijuana. The charges against him were eventually dropped because he agreed to cooperate with the arresting officers and deliver the marijuana to Columbus, Ohio. Grecni's cooperation led to the arrest of Milton Frazier, the individual who accepted the marijuana.
 
 
 5
 In November 1988, Grecni called the Franklin County Narcotics Task Force and arranged a meeting with Detective Terry Black (Black) and Detective Tom Eubank (Eubank). Black and Eubank are authorized Drug Enforcement Administration (DEA) agents. Grecni indicated that he wanted to work as an informant for them. On November 15, 1988, he telephoned Eubank with information that two male Mexican drug dealers had arrived in Columbus. Grecni said one of the drug dealers, Jose Dela Cruz (Dela Cruz), wanted to take him to Decatur, Indiana for a large marijuana transaction. Eubank told Grecni not to travel to Indiana because he did not have the time or manpower to assemble adequate surveillance.
 
 
 6
 Early in the morning of November 23, 1988, Officer Wendell Towns (Towns) of the Columbus Police Department observed a car in the middle of an intersection with a man at the wheel who appeared to be asleep. Towns approached the vehicle and observed Grecni behind the wheel, either asleep or passed out. Towns woke up Grecni and checked for signs of intoxication. He detected none. Grecni told Towns that he had been visiting a friend at a nearby apartment complex. Towns instructed him to return to the complex and get some rest and then left the scene. Moments later, after observing him driving away from the apartment complex, Towns began following Grecni.
 
 
 7
 Grecni accelerated, attempting to elude Towns, who turned on his beacon lights and siren and chased Grecni at high speed. During the chase, Grecni hurled both a small handgun and a sawed-off shotgun from his car. He then jumped from the car while it was still in motion, discarded a leather jacket that he had been wearing, and ran into a wooded area.
 
 
 8
 During a subsequent search of the area, Towns found the 12-gauge sawed-off shotgun and the leather jacket. The jacket contained: (1) a large amount of cash, (2) a small amount of marijuana, (3) a clip holster for a small handgun, and (4) two or three shotgun shells of the same type as those found in the 12-gauge sawed-off shotgun. Towns and another officer who had been called to the scene impounded the car that Grecni had been driving. In the back seat, the officers found two unlocked suitcases containing large amounts of marijuana. In the trunk, the officer found three large trash bags filled with more than 110 pounds of marijuana. During the inventory search, the officers also found a .30/.30 rifle under the floorboards of the vehicle.
 
 
 9
 A few hours later, at 3:15 a.m., a police officer spotted a person matching Grecni's description at a nearby donut shop. Grecni was arrested and searched incident to the arrest. The arresting officer found .30/.30 rifle slugs and two .12 gauge shotgun shells on Grecni's person. He also found a large amount of money in Grecni's pants which, together with the money found in the leather jacket, totalled $7,029.48.
 
 
 10
 After Grecni was brought to the police station, Detective Tomassina Jacobs and Black read him his Miranda rights, Miranda v. Arizona, 384 U.S. 436 (1966). Grecni then waived his rights and agreed to talk to Black about the circumstances surrounding his arrest. At that time, about 5:00 a.m., Grecni was lucid and coherent. He did not demonstrate any difficulty speaking with Black. However, about ten or 15 minutes later, Black observed that Grecni began to doze off. Black decided that he would conclude the interview the following afternoon. During the afternoon interview, Grecni admitted that: (1) he had been dealing in large quantities of marijuana for the last several months, (2) he had received 120 pounds of marijuana from Dela Cruz when he traveled to Indiana the previous week, and (3) he was taking the marijuana to a buyer when Towns found him asleep in his car. Black did not read Grecni his Miranda rights prior to beginning the afternoon session.
 
 III.
 
 11
 On appeal, Grecni says that: 1) the district court erred in denying suppression of his statements following his arrest; 2) the district court erred in denying his motion to suppress physical evidence; 3) the government violated his due process rights under the Jencks Act, 18 U.S.C. Sec. 3500, and Brady v. Maryland, 373 U.S. 83 (1963); 4) his conviction is against the manifest weight of the evidence; and 5) the district court erred in denying his motion for judgment of acquittal.
 
 A.
 
 12
 Grecni first argues the district court erred in admitting into evidence the statements he made to Black. According to Grecni, those statements were elicited by Black in violation of the protections set forth in Miranda v. Arizona, 384 U.S. 436 (1966). It is undisputed that Grecni waived those rights. However, Grecni argues that the waiver was invalid because it was not executed in a voluntary, knowing, and intelligent manner. Id. at 444. Instead, Grecni says, he waived his rights when fatigue and drug use had rendered him groggy, incoherent, and unintelligible.
 
 
 13
 It is well-settled that this court reviews a district court's factual findings with respect to a motion to suppress under the clearly erroneous standard. See, e.g., United States v. Pino, 855 F.2d 357, 361 (6th Cir.1988). As to Grecni's waiver of his rights, the government need prove a proper waiver only by a preponderance of the evidence. Colorado v. Connelly, 470 U.S. 157, 168 (1986). The voluntariness of a waiver depends on the absence of police overreaching. Id. at 170. A waiver is knowing and intelligent if it is "made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 425 (1986).
 
 
 14
 Although Grecni claims that his waiver was not voluntary, knowing, or intelligent, he does not really attack the voluntariness of the waiver. For example, he make no assertion that the police resorted to physical or psychological pressure to elicit his waiver. Rather, he says that he was incoherent and falling asleep when he executed the waiver, a challenge founded on the requirement that a waiver must be knowing.
 
 
 15
 On this issue, the district court found that, at the time Grecni gave his waiver, he was lucid, coherent, and aware of the rights he elected to abandon. This finding is supported by Black's uncontested testimony at the suppression hearing that Grecni did not become groggy until several minutes after he waived his Miranda rights. Thus, the district court did not commit clear error in determining that the government had shown, by a preponderance of the evidence, that Grecni's waiver was voluntary, knowing, and intelligent and denying Grecni's motion to suppress the incriminating oral statements that he made to Black.
 
 B.
 
 16
 Next, Grecni argues that the district court erred in denying his motion to suppress physical evidence because the evidence seized was the fruit of an unconstitutional warrantless search of his car. This argument also fails because Grecni has no standing to challenge the search. To contest the admissibility of physical evidence obtained in a warrantless search, a person must have a legitimate expectation of privacy in the items or area searched. See United States v. Knox, 839 F.2d 285, 293 (6th Cir.1988). A legitimate expectation of privacy incorporates two elements: (1) whether defendant exhibited an actual subjective expectation of privacy, and (2) whether the defendant's subjective expectation is "one that society is prepared to recognize as reasonable." Id. (quoting United States v. Tolbert, 692 F.2d 1041, 1044 (6th Cir.1982)). At the time of the search, Grecni had no reasonable expectation of privacy in the car or in any items found in the car. He abandoned that expectation when, in trying to elude the police, he left his car unlocked and unoccupied with the keys in the ignition. Given these circumstances, Grecni cannot contest the search of items that he abandoned. See United States v. Tate, 821 F.2d 1328, 1330 (8th Cir.1988); United States v. Collis, 766 F.2d 219, 222 (6th Cir.1985).
 
 
 17
 Even if Grecni retained a reasonable expectation of privacy in his car and its contents, the police did not need to obtain a warrant before searching them. In United States v. Ross, 456 U.S. 798, 823-24 (1982), the United States Supreme Court held that police do not need a warrant to search a car, including containers located in the car's passenger section and trunk, when there is probable cause to believe the car contains contraband. As Towns pursued Grecni in a high speed chase, he saw Grecni discard two guns, including a sawed-off shotgun. Before Grecni ran into the woods, he abandoned his leather jacket, which contained a large sum of money and a small amount of marijuana. Thus, because everything else that Grecni discarded either was contraband or contained contraband, Towns and the other police officer clearly had probable cause to believe that Grecni's car also contained contraband.
 
 
 18
 Under either theory, then, the search was constitutional. In addition, we acknowledge that the search of Grecni's car and its contents could be upheld under the Supreme Court's recent decision in California v. Hodari D., 499 U.S. ----, 111 S.Ct. ----, 113 L Ed.2d 690, 699 (1991), holding that anything that a suspect discards while fleeing from police may be used as evidence of guilt because it is not the fruit of a seizure. Accordingly, the district court did not err when it denied Grecni's motion to suppress the marijuana the police found in the suitcases in the back seat of the car and the trash bags in trunk of the car.
 
 C.
 
 19
 Grecni says the government failed to provide documents that it was required to disclose under Brady v. Maryland, 373 U.S. 83 (1963), and the Jencks Act, 18 U.S.C. Sec. 3500. Brady places on the government an affirmative obligation to disclose information in its possession that is both favorable to the defendant and material to guilt or punishment. Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987) (citations omitted). The Jencks Act requires the government, upon a motion of the defendant, to provide the defendant with any prior statement of a witness in its possession that relates to the subject matter as to which the witness has testified. 18 U.S.C. Sec. 3500(b).
 
 1.
 
 20
 Grecni says the government did not provide him with material that shows he was working with Black and Eubank as a DEA informant when he went to Indiana to pick up the marijuana. Under Brady, 373 U.S. at 87, the government must only disclose evidence that is material to guilt or innocence. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the trial would have been different. Ritchie, 480 U.S. at 57-58. Grecni is unable to make such a showing.
 
 
 21
 In support of his Brady claim, Grecni has scoured the transcript of the trial and pointed to a number of vague references to written documents that were not produced by the government, but he has not demonstrated that the production of the documents could have lead to his acquittal because the documents do not significantly strengthen Grecni's claim that he was working as an informant for the DEA when he went to Indiana with Dela Cruz. For instance, Grecni says he should have been given documents that confirm that he worked as a DEA informant in Texas, but, at trial, the government did not dispute this fact. Moreover, whether Grecni worked as a DEA informant in Texas has no direct bearing on whether Grecni received authorization from the DEA in Ohio to travel to Indiana and buy marijuana.
 
 
 22
 In addition, Grecni says the government should have produced a report reflecting that Grecni's wife called Eubank while Grecni was in Indiana. Such a document would be immaterial because Eubank admitted at trial that Grecni's wife had called. Despite this admission, the jury concluded that Grecni's trip to Indiana was not authorized by the DEA. Similarly, Grecni argues that the government failed to provide him a copy of his signed Cooperating Individual Agreement, which showed that he was working for the DEA in Texas, prior to his cross-examination. According to Grecni, the timing of the disclosure prevented his cross-examination of the DEA agents who testified against him from being as effective as it might have been. This delay in disclosure also was not material. The jury heard the impeaching evidence and still decided that it did not believe Grecni's story.
 
 
 23
 In a pro se appellate brief, Grecni also says that he was denied a copy of the DEA Agents' Manual and therefore could not show that the agents who testified against him did not follow agency policy. Again, this is immaterial because whether the agents were following policy has no bearing on whether he was authorized to purchase marijuana. Finally, Grecni's pro se brief alludes to tapes of conversations, some of which he claims the DEA destroyed, that were not turned over to him. Grecni's assertions about the alleged tapes fall into two categories: either the tapes would show that the DEA agents were lying or they would show that the DEA "placed him out on his own" to arrange transactions. These claims are so vague and muddled that we are satisfied that the omission of the tapes from trial, if indeed they even exist, did not deny Grecni his right to a fair trial. Thus, Grecni's Brady claim fails.
 
 2.
 
 24
 Regarding its obligations under the Jencks Act, a review of the record reveals that the government timely turned over material to Grecni, including: (1) a summary of events compiled by Eubank, (2) a summary of events compiled by Black, (3) taped telephone conversations that were made when Grecni was attempting to cooperate after his arrest on November 23, 1988, and (4) a transcript of Black's grand jury testimony. Grecni nevertheless says the government failed to meet its Jencks Act obligations because Eubank and Black made vague references to documents in their testimony and the documents were never disclosed.
 
 
 25
 The operation of the Jencks Act is premised on the notion that defendants will make specific requests for materials to be provided by the government. "Before a district court can reach the question of whether a disputed document is a statement as defined by the Jencks Act it must be requested with sufficient specificity." United States v. Allen, 798 F.2d 985, 996 (7th Cir.1986). A district court need not even conduct an in camera review unless the defendant meets the initial burden of showing that a certain document exists, that the document qualifies as a statement under the Jencks Act, and that the government violated the law by failing to provide the defendant with the document. Id.
 
 
 26
 At trial, Grecni's attorney made the following non-specific, wholly perfunctory attempt to preserve the Jencks Act issue for appeal:
 
 
 27
 Your honor, in response to the disclosure request just made, I received a DEA Form 6 Report of Investigation dated 11-30-88, and signed December 5, '88. It's a six-page document, apparently prepared by Detective Terry Black. I also received a transcript of Detective Terry Black's Grand Jury testimony. I just wanted to inform the Court this is all I received in response to the disclosure request.
 
 
 28
 THE COURT: Is there any additional Jencks material?
 
 
 29
 [THE GOVERNMENT]: Not that I'm aware of, your Honor.
 
 
 30
 [DEFENSE COUNSEL]: Any prior statements or reports?
 
 
 31
 [THE GOVERNMENT]: Not that I'm aware of. That's all I have.
 
 
 32
 [DEFENSE COUNSEL]: Okay. Just wanted to put it on the record.
 
 
 33
 THE COURT: Do you need more time?
 
 
 34
 [DEFENSE COUNSEL]: No, your Honor.
 
 
 35
 Trial Transcript, Vol. II at 64. Grecni now points to certain documents, most of which were identified with some specificity in cross-examination, as documents that he should have received under the Jencks Act. However, Grecni cannot identify any place in the record where he specifically requested any of the documents identified during cross-examination.
 
 
 36
 The Jencks Act was designed to prevent defendants from engaging in blind "fishing expeditions" through the government's files. United States v. Presser, 844 F.2d 1275, 1283 (6th Cir.1988) (citing United States v. Pope, 574 U.S. 320, 324 (6th Cir.1978)). By failing to specify what documents he was seeking, Grecni effectively requested that the government grope through its files to find statements relating to its witnesses' testimony. The government is not required to engage in such an undertaking. Thus, because Grecni failed to preserve any specific Jencks Act issues for his appeal, we are unable to grant him any relief.
 
 D.
 
 37
 Grecni says that there was not sufficient evidence to sustain his conviction and that the district court erred in denying his motion for judgment of acquittal, filed pursuant to Fed.R.Crim.P. 29. The standard governing our review of the sufficiency of the evidence supporting a criminal conviction is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Gallo, 763 F.2d 1504, 1518 (6th Cir.1985), cert. denied, 475 U.S. 1017 (1986) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). The test is the same whether the evidence is direct or circumstantial. Id.
 
 
 38
 There is undisputed evidence that Grecni was transporting more than 100 pounds of marijuana. He admitted to Black that he intended to sell it. During the chase with Towns, Grecni discarded a handgun and a sawed-off shot gun. When police searched the leather jacket that Grecni threw away, they found a clip holster for the handgun, and two or three shotgun shells that were the same type as those found in the sawed-off shotgun. When the police searched the car that Grecni abandoned, they found another rifle underneath its floorboards.
 
 
 39
 Grecni's sole defense to the prosecution was that he was working as a DEA informant during the entire episode. Both Grecni and his wife testified to that effect at trial. However, their testimony was rebutted by the testimony of several officers who emphatically denied that Grecni was working for the DEA at the time of his arrest. Because the jury was entitled to believe the officers, rather than Grecni and his wife, there is sufficient evidence in the record for reasonable jurors to have found that Grecni was not authorized to possess the firearms and the marijuana. The district court did not err in denying Grecni's motion for judgment of acquittal, and his convictions must stand.
 
 E.
 
 40
 Finally, Grecni's pro se brief raises two claims of prejudicial conduct by the government during the trial. Grecni says that he was prejudiced by an improper question by the government on cross-examination. Specifically, he was asked if he was a member of the Mexican Mafia. Grecni also says that he was prejudiced by improper statements made by the government during closing argument. During his closing, the government's attorney improperly suggested that Grecni could have testified before the grand jury in order to clear his name. In both instances, Grecni's counsel objected to the government's conduct, and the objection was sustained. As to the improper closing argument, Grecni asserts that the district court erred by not giving a curative instruction, even though he did not request such an instruction. Given the sufficiency of the evidence supporting Grecni's convictions and the fact that his counsel's objections were sustained in both instances, we are satisfied that the government's improper conduct constituted harmless error. See Chapman v. California, 386 U.S. 18 (1967).
 
 IV.
 
 41
 In its appeal, the government contends that the district court committed clear error in sentencing Grecni to only 33 months imprisonment on Count I. In particular, the government says that the district court improperly applied United States Sentencing Guideline Sec. 3E1.1, reducing Grecni's base offense level from 20 to 18 for acceptance of responsibility for his offense. According to the government, Grecni failed to qualify for a reduction for acceptance of responsibility because he never admitted to possessing the requisite criminal intent.
 
 
 42
 A district court's determination as to whether a defendant has accepted responsibility is a fact question, subject to review under the clearly erroneous standard. United States v. Wilson, 878 F.2d 921, 923 (6th Cir.1989). In this case, the district court appears to have found the facts correctly but then applied the law incorrectly to the facts. During the sentencing hearing, the district court acknowledged that Grecni had never admitted possessing any criminal intent. Nevertheless, the district court reduced Grecni's base offense level solely because he admitted his involvement in the objective activity of drug trafficking.
 
 
 43
 This was an error of law, not of fact. Under the guidelines, acceptance of responsibility requires more than merely admitting to involvement in the offense. There also must be an admission of criminal intent. See United States v. Sloman, 909 F.2d 176, 182 (6th Cir.1990). To this day, Grecni has maintained his innocence, claiming that he was working as an informant for the DEA. Therefore, he was not entitled to a reduction of his base offense level for acceptance of responsibility. Based on the foregoing, we VACATE Grecni's sentence on Count I and REMAND the case to the district court for resentencing.