19 F.3d 20
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James T. MCBRIDE, Defendant-Appellant.
 No. 93-3218.
 United States Court of Appeals, Sixth Circuit.
 March 1, 1994.
 
 Before: BOGGS and SILER, Circuit Judges; and CHURCHILL, Senior District Judge.*
 PER CURIAM.
 
 
 1
 James McBride was convicted on drug charges related to the importation of three packages of cocaine. On appeal, McBride argues that his conviction should be set aside because the district court erred when it allowed the prosecution to use a 15-year old conviction to impeach him. McBride also contends that the evidence was insufficient to support the conviction, that he was denied effective assistance of counsel, and that the district court erred when it enhanced his sentence for obstruction of justice. Because we find that the district court's admission of the stale conviction was harmless error and that McBride's other arguments are without merit, we affirm his conviction.
 
 
 2
 * McBride appeals from his convictions for conspiring to import cocaine, in violation of 21 U.S.C. Sec. 963, three counts of importing cocaine, in violation of 21 U.S.C. Sec. 952(a), Sec. 960(a), and one count of possessing cocaine with the intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1). These charges arose from the shipment of three packages of cocaine from Colombia to the United States.
 
 
 3
 On April 1, 1992, a customs inspector in Florida examined two United Parcel Service ("UPS") packages that carried the same handwritten return address, Computer House, Colombia. One package was addressed to Elaine Sharpe Consultant, 4539 Crystal Clear Drive, Hilliard, Ohio; the other package was addressed to Plantation to Market Consultants, 4085 Leap Road, Hilliard, Ohio. After a police dog indicated that the packages contained narcotics, customs inspectors opened the packages and discovered that each package contained approximately 227 grams of cocaine. The Customs Service forwarded the packages to its Ohio office. On April 2, another customs inspector became suspicious of a package that was addressed to Market Direct, Incorporated, 3359 Edgebrook Drive, Dublin, Ohio. This package contained approximately 250 grams of cocaine.
 
 
 4
 The United States Customs Service determined that the Crystal Clear Drive address was the residence of McBride's girlfriend (now wife), Lori Kaps, the Leap Road address was McBride's place of employment, and the Edgebrook Drive address was McBride's residence. On April 3, a United States Customs agent, disguised as a UPS driver, delivered the packages to the Crystal Clear Drive and Leap Road addresses. At the Leap Road address, Kaps signed for the package addressed to Plantations to Market with the name "E. Sharpe." At the Crystal Clear Drive address, a woman, who turned out to be Kaps's grandmother, signed for the package in her true name.
 
 
 5
 The third package was never delivered because it was evident that the Customs Service had searched it. A government surveillance team, however, noted that McBride was at home on the day the other packages were delivered and that he kept looking up and down the street as if he were waiting for someone. When UPS made a delivery to a neighbor's house, the agents observed McBride follow the truck down the street.
 
 
 6
 The Customs Service then obtained a search warrant for all three addresses. The only incriminating evidence found at the Crystal Clear Drive and Leap Road addresses was the two packages of cocaine. A search of McBride's residence, however, disclosed a duffel bag full of airline ticket receipts, a small amount of marijuana, and a small amount of Colombian currency.
 
 
 7
 When the agents questioned McBride, he acknowledged that he had recently travelled to Colombia. He claimed that he went there to meet with people to discuss importing exotic fruits into the United States. McBride said that he left Ohio on March 22, 1992, changed planes in Miami, and departed for Barranquilla, Colombia on March 23. McBride left Colombia on March 31 and returned to Ohio on April 1.[1]
 
 
 8
 McBride's first trial ended in a mistrial when, on the first day, McBride produced a facsimile transmission of an affidavit written in Spanish. The affiants, Villanueva and De La Rosa, declared that McBride lost his address book while he was in Colombia. The court granted a mistrial so McBride could follow up on this new evidence.
 
 
 9
 McBride, however, said that he was unsuccessful in contacting the affiants directly. The court granted a continuance to give McBride more time to locate them. McBride finally contacted Villanueva, but Villanueva said that he was afraid to come to the United States "for fear of reprisal by the United States government as a result of his testimony." McBride then requested permission to take the depositions of the affiants in Colombia at the government's expense.
 
 
 10
 The court denied his request and set a trial date. On the morning of his second trial, McBride informed the court that De La Rosa was now willing to testify in the United States and he requested a continuance. The court denied his request.
 
 
 11
 McBride testified at trial that his airline tickets and hotel bill were paid for by his friend of 25 years, Raphael Cerraro. McBride could not give an address for Cerraro, but he did know his telephone number. McBride claimed that Cerraro helped him make contacts for setting up a business that involved computerized listings of services and products, particularly bananas, for importation into the United States. McBride, however, was unable to supply the full names, addresses, or occupations of his prospective business contacts in Colombia.
 
 
 12
 McBride also claimed that while he was in Colombia, someone broke into his hotel room and stole his address book. Nothing else was taken from his room. He also testified that he lost the police report while he was in Colombia. The defense theory was that a thief stole McBride's address book, randomly chose three addresses, and gratuitously shipped large amounts of cocaine to them.
 
 
 13
 McBride was convicted on all counts. The district court sentenced McBride to 93 months in prison. McBride's base offense level was 26, with a criminal history category of III. The district court, however, increased the offense level by two levels for obstruction of justice. The district court found that McBride had perjured himself at trial and noted that McBride's testimony was "feeble and wholly incredible."
 
 II
 
 14
 McBride appeals the district court's denial of his motion for a mistrial. McBride raises several issues concerning the district court's decision to allow the government to impeach him with evidence of a 1977 conviction for possession of cocaine and a 1986 conviction for possessing a gun under a disability. A denial of a motion for a mistrial is reviewed for an abuse of discretion. United States v. Blakeney, 942 F.2d 1001, 1030 (6th Cir.1991), cert. denied, 112 S.Ct. 646 (1991) and 112 S.Ct. 881 (1992). "The primary concern in ruling upon a motion for a mistrial is a determination of the fairness to the accused." Ibid.
 
 
 15
 Certain prior convictions are admissible under Fed.R.Evid. 609.[2] A district court has "broad discretion to admit evidence of prior convictions after conducting the probative value/prejudicial effect inquiry. Even if this court concludes that the district court's ruling was erroneous, the defendant must demonstrate substantial prejudice to be entitled to a reversal." United States v. Sloman, 909 F.2d 176, 181 (6th Cir.1990).
 
 
 16
 * McBride's first argument is that the court should not have allowed the government to impeach him by asking him about his 1977 conviction for cocaine possession. McBride contends that the government did not give him specific notice that it would be using that particular prior conviction as required by Rule 609(b). McBride also argues that the district court failed to make the special finding of probative value mandated by Rule 609(b).
 
 
 17
 Rule 609(b) requires a party who intends to use a stale conviction to give "sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence." Fed.R.Evid. 609(b). This requirement is meant to prevent unfair surprise and to allow the defendant to prepare fully for trial. Fed.R.Evid. 609, comment. The Notes of the Conference Committee, H.Rep. 93-1597, indicate that the House Committee anticipated that "a written notice ... will ordinarily include such information as the date of the conviction, the jurisdiction, and the offense or statute involved."
 
 
 18
 In United States v. Sloman, supra, we upheld the district court's determination that the government could use a stale conviction, despite the government's failure to give notice to the defendant. In that case, the government did not give the required notice until after the defendant took the witness stand. We found that written notice was not required, partly because the defense counsel was not unfairly surprised. Id. at 180.
 
 
 19
 In this case, too, it appears that McBride was not unfairly surprised by the government's use of his 1977 conviction. First, the government responded to his discovery request by stating "[c]opies of items which can reasonably be reproduced will be provided to the defendant. This will include ... all statements of McBride ... and his criminal record." Also, in response to McBride's motion to compel discovery, the government indicated that it had provided McBride's actual convictions in late May 1992. Finally, McBride did not argue at trial that the admission of the 1977 conviction was unfair surprise. Consequently, there is no basis for finding that the notice given to McBride was insufficient.
 
 
 20
 McBride's second argument about the 1977 conviction is that the district court failed to make a specific finding that the probative value of the evidence substantially outweighed its prejudicial effect. The comments to Rule 609(b) indicate that stale convictions should be admitted only in "exceptional circumstances under which the conviction substantially bears on the credibility of the witness."
 
 
 21
 "Rule 609(b) creates, in effect, a rebuttable presumption that convictions over ten years old are more prejudicial than helpful and should be excluded." United States v. Sims, 588 F.2d 1145, 1150 (6th Cir.1978). "[T]o admit impeaching evidence of a prior conviction under Rule 609, a court must make an on-the-record finding based on the facts that the conviction's probative value substantially outweighs its prejudicial impact." United States v. Meyers, 952 F.2d 914, 916-17 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992) (emphasis added). Rule 609(b), in particular, requires a " 'special finding' " of probative value. United States v. Morrow, 977 F.2d 222, 228 (6th Cir.1992) (en banc) (quoting United States v. Thompson, 612 F.2d 233, 234 (6th Cir.1979)), cert. denied, 113 S.Ct. 2969 (1993).
 
 
 22
 In this case, the court did make an on-the-record finding. While the government was cross-examining McBride, the Assistant United States Attorney requested a side bar conference at which time she asked the court to allow her to impeach McBride using his past criminal history. The focus of the conference was the 1977 conviction and its prejudicial effect. McBride's counsel objected to the introduction of the conviction under Rules 609 and 403. After hearing arguments from both sides on the issue, the court stated, "Well, I'm going to overrule your objection, and I am going to permit the government to inquire. I don't think that the probative value is outweighed by the prejudicial potential, and I do think it's on point, and so I will permit the inquiry."
 
 
 23
 McBride argues that the court's statement was not a "special finding" on the probative value/prejudicial effect of the stale conviction. We agree. The bare record indicates that the district court did not make the "specific finding" required by Rule 609(b). Instead, the district court found that the probative value of the conviction was not outweighed by its prejudicial effect. This finding is quantitatively different from the finding required by Rule 609(b), because Rule 609(b) requires that the probative value of the conviction substantially outweigh its prejudicial effect.[3]
 
 
 24
 Under Rule 609(b), the district court must exclude evidence unless there is an affirmative finding that its probative value "substantially outweighs" its prejudicial effect. The district court did not make such a finding in this case. Thus we find that the district court abused its discretion by admitting the stale conviction under Rule 609(b) without first making the necessary finding that its probative value substantially outweighed its prejudicial effect.
 
 
 25
 Since the district court erred, we review the record to determine if district court committed reversible error. United States v. Scisney, 885 F.2d 325, 326 (6th Cir.1989). McBride contends that the admission of his prior conviction violated his right to due process. "A federal constitutional error can be held harmless only if the Court is able 'to declare a belief that it was harmless beyond a reasonable doubt.' "[4] United States v. Martin, 897 F.2d 1368, 1372 (6th Cir.1990) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828 (1967)).
 
 
 26
 In Sloman, we found harmless the district court's decision to allow the government to impeach the defendant with evidence of a 17-year old conviction for a somewhat similar crime. Although we questioned the district court's decision to admit the evidence, we determined that the admission "did not unfairly tip the scales in favor of the government...." Sloman, 909 F.2d at 181. We based our conclusion on the fact that the evidence of the defendant's participation was overwhelming and his explanations were totally unconvincing. Ibid.
 
 
 27
 Similarly, the circumstantial evidence of McBride's participation in the importation conspiracy was strong and his explanation was, as the district court stated, "wholly incredible." The evidence at trial indicated that the three packages were sent while McBride was in Colombia, or very shortly after he left, and the three separate addresses were all closely linked to McBride. McBride's testimony about the business trip was notable for its lack of details about names, addresses, and occupations of his alleged "business contacts." In light of the evidence that was before the jury, we conclude that the admission of McBride's prior conviction was harmless beyond a reasonable doubt.
 
 B
 
 28
 McBride also argues that the district court erred in allowing the government to cross-examine him about his 1986 conviction for possession of a firearm under a disability. Since this conviction was less than ten years old, the district court had only to make a finding that the probative value outweighed its prejudicial effect. Fed.R.Evid. 609(a)(1). McBride argues that the prejudicial effect outweighed its probative value because admission of the evidence inflamed the jury by creating the impression that McBride was involved in the violent international drug trade.
 
 
 29
 In United States v. Blackburn, No. 92-1131, 1993 WL 204241 (6th Cir. June 8, 1993), we found no error where the district court allowed the government to impeach a defendant charged with bank robbery with evidence of his prior conviction for assault. The district court denied the defendant's in limine motion to suppress the convictions. The district court did not elaborate on its reasons for allowing the impeachment except to say that the probative value of the evidence would outweigh its prejudicial effect. Id. at * 2.
 
 
 30
 We found that even though the district court's analysis was not extensive, the explanation was adequate. We concluded that the prejudicial effect of a prior conviction is "greater when the prior conviction was for a similar crime; a prior conviction for a dissimilar crime would be more readily admissible." Ibid. (citing Gordon v. United States, 383 F.2d 936, 940 (D.C.Cir.1967)). We concluded that these dissimilarities, coupled with the prior conviction's lack of inflammatory aspects, ameliorated any prejudicial effect.
 
 
 31
 The Blackburn rationale applies to McBride's case. The lack of similarity between McBride's prior conviction for possession of a firearm and the charge of importation of cocaine lessened the prejudicial effect of the firearms conviction. Moreover, as in Blackburn, the district court stated on the record that the probative value outweighed the conviction's prejudicial effect. Consequently, the district court did not abuse its discretion in admitting the 1986 conviction for impeachment purposes.
 
 
 32
 Since the admission of the 1977 conviction was harmless error and the admission of the 1986 conviction was not an abuse of discretion, the district court was correct in denying McBride's motion for a mistrial.
 
 III
 
 33
 McBride claims that he was entitled to a judgment of acquittal because the government never proved that he 1) willfully became a member of any conspiracy; 2) actually had possession of cocaine as required by 21 U.S.C. Sec. 841(a)(1); or 3) caused the cocaine to be imported into the United States.[5] " 'It is not for us to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it.' " United States v. DeClue, 899 F.2d 1465, 1471 (6th Cir.1990) (quoting Glasser v. United States, 315 U.S. 60, 78, 62 S.Ct. 457, 469 (1942)). Even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " United States v. Ellzey, 874 F.2d 324, 328 (6th Cir.1989) (quoting United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984)).
 
 
 34
 First, we find that the facts stated above are sufficient to support McBride's convictions on the conspiracy charge. "The defendant's co-conspirator does not have to be named in the indictment." United States v. Lopez, 6 F.3d 1281, 1288 (7th Cir.1993). Additionally, "at least two persons are required to constitute a conspiracy, but the identity of the other members of the conspiracy is not needed, inasmuch as one person can be convicted of conspiring with persons whose names are unknown." Rogers v. United States, 340 U.S. 367, 375, 71 S.Ct. 438, 443 (1951); United States v. Rey, 923 F.2d 1217, 1222 (6th Cir.1991). "The government does not have to prove with whom the defendant conspired, but only that the defendant joined the alleged agreement." Lopez, 6 F.3d at 1288. There was evidence that McBride had several conversations with his friend, Cerraro, shortly before McBride went to Colombia and that Cerraro paid for McBride's airfare and hotel so that McBride could make contacts for his amorphous banana importation business. A rational juror could have inferred that the two men came to an agreement to import cocaine into the United States during those conversations. Also, a rational juror could find that McBride conspired with Kaps or with the person who mailed the package after McBride left Colombia. Consequently, we conclude that the evidence was sufficient to support the jury's finding that McBride conspired to import cocaine into the United States.
 
 
 35
 Second, we find that there was sufficient evidence to support the jury's finding that McBride caused the cocaine to be imported into the country. The packages were mailed during the time that McBride was in Colombia and that the packages were mailed to addresses where McBride would have easy access to them, and federal agents observed McBride waiting impatiently for a UPS delivery. Considering the fact that the jury had a choice of either believing McBride was involved in the importation of the cocaine or believing McBride's story about the stolen address book, a rational juror could find beyond a reasonable doubt that McBride was guilty as charged.
 
 
 36
 McBride also argues that the government did not prove that McBride "possessed" the cocaine. "Possession may be actual or constructive. Constructive possession means 'the ownership, dominion, or control over the item itself, or dominion over the premises where the item is located.' " United States v. Tisdale, 952 F.2d 934, 937 (6th Cir.1992) (quoting United States v. Snyder, 913 F.2d 300, 304 (6th Cir.1990)) (citations and internal quotation marks omitted). The Seventh Circuit has described "constructive possession" in the following way:
 
 
 37
 [T]he essential point is that the defendant have the ultimate control over the drugs. He need not have them literally in his hands or on premises that he occupies but he must have the right (not the legal right, but the recognized authority in his criminal milieu) to possess them, as the owner of a safe deposit box has legal possession of the contents even though the bank has actual custody.
 
 
 38
 United States v. Manzella, 791 F.2d 1263, 1266 (7th Cir.1986).
 
 
 39
 The government argues that McBride had constructive possession of the packages of cocaine because the people who received them did not open them but set them aside for McBride. A juror could easily infer from this that McBride told the two women that he was expecting packages addressed to Elaine Sharpe Consultant and Plantation to Market Consultants. By doing so, he exercised dominion over the contents of the packages even though he never had physical custody of them.
 
 
 40
 Since there is evidence that gives rise to a reasonable inference that McBride exerted dominion over the packages, and since there is sufficient evidence to support the conclusion that McBride conspired to import and did import the cocaine, the district court was correct in denying his motion for a judgment of acquittal.
 
 IV
 
 41
 McBride argues that his constitutional right to effective assistance of counsel was violated because neither his trial counsel nor his counsel at the sentencing stage challenged the forensic chemist's determination that the total weight of the cocaine was 500.76 grams.[6] McBride contends that if his counsel had cross-examined the chemist and undermined her testimony, McBride's sentence would have been based on a lower amount.
 
 
 42
 McBride, however, has raised his ineffective assistance of counsel for the first time on appeal. Generally, this court declines to hear ineffective assistance of counsel claims the first time on appeal because there has been no opportunity to develop the record on the merits of the allegations. See United States v. Martin, 920 F.2d 345, 349 (6th Cir.1990), cert. denied, 111 S.Ct. 2038 (1991); United States v. Swidan, 888 F.2d 1076, 1081 (6th Cir.1989). Since McBride is claiming ineffective assistance by two separate lawyers, the record is doubly insufficient for appellate review in this case. Consequently, we decline to consider the merits of his argument. See United States v. Goodlett, 3 F.3d 976, 980 (6th Cir.1993).
 
 V
 
 43
 McBride argues that the district court erred when it enhanced his sentence by two levels for obstruction of justice. The sentencing guidelines provide as follows: "If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." U.S.S.G. Sec. 3C1.1.
 
 
 44
 Although this provision is not intended to punish a defendant for denying guilt, it may be used to punish a defendant for lying under oath. United States v. Alvarez, 927 F.2d 300, 303 (6th Cir.), cert. denied, 111 S.Ct. 2246 (1991). A district court's sentencing decisions are reviewed for clear error. United States v. Moreno, 933 F.2d 362, 374 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991). " 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988) (internal quotation marks omitted) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511 (1985)).
 
 
 45
 In United States v. Medina, 992 F.2d 573 (6th Cir.1993), cert. denied, 62 U.S.L.W. 3321 (U.S. Feb. 22, 1994), we held that an enhancement under Sec. 3C1.1 is proper where the district court makes a specific finding that the defendant lied. In this case, the district court noted that McBride's testimony was "feeble," "wholly incredible," and "obviously fabricated." The court then enhanced McBride's sentence under Sec. 3C1.1, relying on "the evidence ... that the defendant willfully committed perjury at his trial in order to obstruct justice...." Since the district court followed the rule of Medina and made a specific finding, we find no clear error in this case and affirm the district court's decision to enhance McBride's sentence for obstruction of justice.
 
 
 46
 The district court's entry of judgment against the defendant is AFFIRMED.
 
 
 
 *
 The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The packages that were sent to the Crystal Clear Drive and Leap Road addresses were mailed from Barranquilla, Colombia on March 30, 1992. The third package of cocaine was mailed on April 1 at 6:15 p.m., shortly after McBride's plane left Colombia
 
 
 [2]
 Rule 609(a) provides in pertinent part:
 (a) General Rule. For the purpose of attacking the credibility of a witness,
 (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused;
 ....
 (b) Time limit. Evidence of a conviction under this rule is not admissible
 if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
 
 
 [3]
 We note that there are three different probative value/prejudicial effect balancing tests in the Federal Rules of Evidence. See Fed.R.Evid. 403, 609(a)(1), 609(b). Rule 403 provides, in part, that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Fed.R.Evid. 403. Under this test, a district court may admit evidence where the probative value is equal to, or even a bit less than, its prejudicial effect
 On the other hand, Rule 609(a)(1) allows a district court to admit evidence of prior convictions if the court "determines that the probative value of admitting this evidence outweighs its prejudicial effect...." Fed.R.Evid. 609(a)(1). Under this test, a district court could admit evidence where the probative value is to any extent greater than its prejudicial effect. Rule 609(b) allows a district court to admit evidence only if the court finds, on the record, that the probative value is much greater than its prejudicial effect.
 In this case, however, the district court's stated test was neither a Rule 403 test nor either of the Rule 609 tests.
 
 
 [4]
 Because this case is on direct appeal from the district court, the Supreme Court's recent qualification of the standard governing collateral review of "trial errors", see Brecht v. Abrahamson, 113 S.Ct. 1710 (1993), is not applicable
 
 
 [5]
 McBride, however, failed to renew his motion for judgment of acquittal at the end of all the proofs. This failure to renew the motion normally constitutes a waiver of his objections to the sufficiency of the evidence. United States v. Williams, 940 F.2d 176, 180 (6th Cir.), cert. denied, 112 S.Ct. 666 (1991). Under these circumstances, we will not consider an appellant's arguments absent a showing of a manifest miscarriage of justice. Ibid
 We choose to review McBride's argument as though he had renewed his motion for acquittal, partly because McBride's appeal fails under either standard and partly because the United States Attorney did not raise this argument in either its brief or at oral argument.
 
 
 [6]
 McBride was represented by appointed counsel at trial. He hired an attorney for the sentencing stage. His current attorney was appointed to represent him under the Criminal Justice Act. Under the Sentencing Guidelines, if the packages contained less than 500 grams, McBride's base offense level would been 24 instead of 26. See U.S.S.G. Sec. 2D1.1