**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 16-30096 |
| | D.C. No. 2:15-cr-00028-MJP-1 |
| v. | |
| ROBBY LEE ROBINSON, *Defendant-Appellant.* | |
| | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted May 11, 2017
Seattle, Washington

Filed August 25, 2017

Before: M. Margaret McKeown, Carlos T. Bea,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Bea

# SUMMARY[*]

### Criminal Law

Vacating a sentence and remanding for resentencing, the panel held that the Washington crime of second-degree assault, Wash. Rev. Code § 9A.36.021, is not a "crime of violence" within the meaning of U.S.S.G. § 2K2.1.

The government did not dispute, and the panel agreed, that subsection 9A.36.021(1)(e) criminalizes conduct that is not covered by section 2K2.1's definition of "crime of violence." The panel held that section 9A.36.021 is indivisible, as it defines a single crime and provides seven different "means" by which a person can commit that crime. The panel concluded that the district court therefore erred in determining that the defendant's prior second-degree assault conviction was for a crime of violence under section 2K2.1.

## COUNSEL

Lynn C. Hartfield (argued), Law Office of Lynn C. Hartfield LLC, Denver, Colorado, for Defendant-Appellant.

Michael Symington Morgan (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

BEA, Circuit Judge:

This case presents the question whether the Washington crime of second-degree assault, *see* Wash. Rev. Code § 9A.36.021, is a "crime of violence" within the meaning of section 2K2.1 of the U.S. Sentencing Guidelines. We conclude that it is not, and we vacate the defendant's sentence and remand for resentencing.

## I. Background

During an argument with his girlfriend's mother, Robby Robinson produced a .22 caliber assault rifle from a vehicle that was parked outside the mother's house. Robinson's girlfriend and her son both called 911. Robinson fled the scene before the police arrived but left the assault rifle behind. After responding to the 911 calls, police officers searched the house and found multiple firearms, including a .22 caliber assault rifle on which Robinson's DNA was later found.

Early the next morning, police officers found Robinson hiding in his sister's car. The officers arrested Robinson, searched the car, and found hidden under the passenger seat a backpack containing a Ruger .44 caliber magnum revolver. Later, Robinson called his girlfriend from jail, asked her to remove the revolver from the car, and made other statements that the district court stated "implied that he ha[d] given [the gun] to his sister to keep."

Robinson was indicted on two counts of being a felon in possession of firearms in violation of 18 U.S.C. § 922(g)(1). The first count related to the guns found at the mother's house, including the assault rifle; the second related to the

revolver found in his sister's car. Robinson agreed to a bench trial, and the district court found him guilty on both counts.

At Robinson's sentencing hearing, the district court noted that Robinson had previously pleaded guilty in Washington state court to one felony count of second-degree assault in violation of section 9A.36.021 of the Revised Code of Washington.[1] The district court ruled that this conviction was a "felony conviction of . . . a crime of violence" under section 2K2.1 of the U.S. Sentencing Guidelines (the "Guidelines"), the section that covered Robinson's conviction under § 922(g)(1). Accordingly, the district court ruled that Robinson's base offense level was twenty-two.[2] The court then applied a four-level enhancement for "[u]s[ing] or possess[ing] any firearm . . . in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), and a two-level enhancement for obstruction of justice based on, *inter alia*, the phone call from jail in which Robinson asked his girlfriend to hide his revolver. *See* U.S.S.G. § 3C1.1. The district court calculated Robinson's sentencing range to be 110–137 months and imposed a below-Guidelines sentence of ninety months'

---

[1] Section 9A.36.021 provides that a person commits second-degree assault if, *inter alia*, "he or she . . . [i]ntentionally assaults another and thereby recklessly inflicts substantial bodily harm." *See* Wash. Rev. Code § 9A.36.021(1)(a). With one exception not relevant here, second-degree assault is a class B felony punishable by up to ten years' imprisonment. *See id.* §§ 9A.36.021(2), 9A.20.021(1)(b).

[2] Section 2K2.1(a)(3) of the Guidelines provides for a base offense level of twenty-two "if . . . the offense involved [certain high-capacity firearms] and . . . the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence."

imprisonment.[3] Robinson timely appealed, challenging only the district court's ruling that his prior second-degree assault conviction was for a "crime of violence."

## II. Jurisdiction and Standard of Review

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo whether a state-law crime constitutes a crime of violence under the Guidelines. *See United States v. Crews*, 621 F.3d 849, 851 (9th Cir. 2010).

## III. Discussion

To determine whether a defendant's prior conviction is a crime of violence under the Guidelines, we apply the categorical approach first outlined in *Taylor v. United States*, 495 U.S. 575 (1990), and later clarified in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and *Mathis v. United States*, 136 S. Ct. 2243 (2016). Under this approach, "we inquire first 'whether the elements of the crime of conviction sufficiently match the elements of the generic federal [definition of a crime of violence].'" *United States v. Arriaga-Pinon*, 852 F.3d 1195, 1198–99 (9th Cir. 2017) (alterations omitted) (quoting *Mathis*, 136 S. Ct. at 2248). Then, "[i]f the statute is overbroad and thus not a categorical

---

[3] As noted above, Robinson's base offense level was twenty-two; with the enhancements, it was twenty-eight. Robinson's criminal history category was IV, which yielded a sentencing range of 110–137 months. Robinson argues (and the government does not dispute) that if his prior conviction was not a crime of violence under section 2K2.1, then his base offense level would be twenty, his total offense level would be twenty-six, and his Guidelines sentencing range would be 92–115 months. Even though the sentence would fall below the correctly calculated Guideline range, the error was not harmless. *See United States v. Munoz-Camarena*, 631 F.3d 1028, 1030–31 (9th Cir. 2011). The government does not argue otherwise.

match, we next ask whether the statute's elements are also an indivisible set." *Id.* at 1199. "Finally, if the statute is divisible, then the modified categorical approach applies and 'a sentencing court looks to a limited class of documents . . . to determine what crime, with what elements, a defendant was convicted of.'" *Id.* (quoting *Mathis*, 136 S. Ct. at 2249). If that crime falls within the generic federal definition, then the defendant's conviction qualifies as a crime of violence.

On appeal, Robinson argues that the Washington crime of second-degree assault is not a crime of violence under the categorical approach, because section 9A.36.021 is both overbroad (i.e., it covers more conduct than the generic federal definition of a crime of violence) and indivisible.[4] The government responds that Robinson's argument is foreclosed by this Court's decision in *United States v. Lawrence*, 627 F.3d 1281 (9th Cir. 2010), in which we held that a prior conviction for second-degree assault under subsection 9A.36.021(1)(a)—the same subsection used to convict Robinson here—was categorically a "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). In the alternative, the government argues that Washington second-degree assault is a crime of violence, because section 9A.36.021 is divisible and because subsection 9A.36.021(1)(a) meets the generic federal definition.

---

[4] Alternatively, Robinson argues that even if section 9A.36.021 is divisible, the specific subsection under which he was charged—9A.36.021(1)(a)—is not categorically a crime of violence because it does not require the *intentional* use of violent force. *See United States v. Dixon*, 805 F.3d 1193 (9th Cir. 2015). Because we agree with Robinson that section 9A.36.021 is both overbroad and indivisible, we do not reach this second argument.

**A.** *Lawrence* **Is Not Controlling.**

First, the government argues that this case is controlled by *United States v. Lawrence*. There, we held that a defendant's prior conviction for second-degree assault under subsection 9A.36.021(1)(a) was categorically a "violent felony" under the ACCA.[5] *See Lawrence*, 627 F.3d at 1288. We explained that because "[s]ection 9A.36.021(1)(a) . . . requires not just an intentional assault, but an intentional assault that results in substantial bodily harm," and because "[t]he Washington criminal code defines 'substantial bodily harm' as 'bodily injury which involves a temporary but substantial disfigurement [and similar],'" the defendant's prior second-degree assault conviction "necessarily require[d] force that [went] beyond the 'least touching[]' and represents 'actual force' that is violent in nature." *Id.* at 1287 (citations and some internal quotation marks omitted). Thus, we held that the prior second-degree assault conviction was for a "violent felony" under the ACCA.

If *Lawrence* were still good law, the government would be correct that it would dispose of Robinson's case. But although *Lawrence* was decided after *Taylor,* it came before *Descamps* and *Mathis*, so we had no occasion in *Lawrence* to determine whether section 9A.36.021 is divisible. Moreover, as we explain below, we conclude that section 9A.36.021 is in fact indivisible. Thus, *Lawrence*'s conclusion that Washington second-degree assault is a violent felony under the ACCA—and, by extension, a crime of violence under the Guidelines—is "clearly irreconcilable

---

[5] We have held that the definition of a crime of violence under the Guidelines and the definition of a violent felony under the ACCA are "identical." *United States v. Ladwig*, 432 F.3d 1001, 1005 n.9 (9th Cir. 2005) (citation omitted).

with the reasoning or theory" of *Descamps* and *Mathis*.
*Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en
banc). We therefore decline to follow it here.

## B. The Washington Crime of Second-Degree Assault Is Not Categorically a Crime of Violence.

### 1. The Government Does Not Dispute, and We Agree with Robinson, that Section 9A.36.021 is Overbroad.

Applying the categorical approach, our first task is to
determine "whether the elements of [Robinson's] crime of
conviction sufficiently match the elements of the generic
federal [definition of a crime of violence.]" *Arriaga-Pinon*,
852 F.3d at 1199 (citations and alterations omitted). Thus,
we must determine whether a person can commit the
Washington crime of second-degree assault through any of
the seven statutory alternatives listed in
section 9A.36.021(1)[6] without committing a crime of
violence within the meaning of the Guidelines.

---

[6] In full, section 9A.36.021(1) reads: "A person is guilty of assault
in the second degree if he or she, under circumstances not amounting to
assault in the first degree:

> (a) Intentionally assaults another and thereby
> recklessly inflicts substantial bodily harm; or
>
> (b) Intentionally and unlawfully causes substantial
> bodily harm to an unborn quick child by intentionally
> and unlawfully inflicting any injury upon the mother
> of such child; or
>
> (c) Assaults another with a deadly weapon; or

Guidelines section 2K2.1 defines a "crime of violence," in relevant part, as "any offense . . . that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* Application Note 1 to U.S.S.G. § 2K2.1 (incorporating by reference the definition of "crime of violence" given in U.S.S.G. § 4B1.2(a)). As used in this definition, "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting identical language used in 18 U.S.C. § 924(e)(2)(B)(i), a provision of the ACCA); *see also Ladwig*, 432 F.3d at 1005 n.9 ("The basic definition of 'violent felony' under section 924(e)(2)(B)(i)[] is identical to the definition of 'crime of violence' under U.S.S.G. § 4B1.2(1)(i)[]." (citations and alterations omitted)).

Subsection 9A.36.021(1)(e), the fifth of section 9A.36.021(1)'s seven subsections, provides that a person commits second-degree assault if "he or she . . . [w]ith intent to commit a felony, assaults another." Robinson argues that this subsection provides a means of committing second-degree assault that does not necessarily require the actual,

---

(d) With intent to inflict bodily harm, administers to or causes to be taken by another, poison or any other destructive or noxious substance; or

(e) With intent to commit a felony, assaults another; or

(f) Knowingly inflicts bodily harm which by design causes such pain or agony as to be the equivalent of that produced by torture; or

(g) Assaults another by strangulation or suffocation."

attempted, or threatened use of force capable of causing physical pain or injury to another.[7]  The government did not dispute Robinson's argument before the district court or on appeal,[8] and we agree with Robinson that subsection (1)(e) criminalizes conduct that is not covered by section 2K2.1's definition of "crime of violence."

## 2.  Section 9A.36.021 Is Indivisible.

We next determine whether section 9A.36.021 is divisible—that is, whether its seven statutory alternatives present seven different "means" by which a person can commit the single crime of second-degree assault or whether they instead present the "elements" of seven separate sub-crimes. *See Mathis*, 136 S. Ct. at 2248–50. This, in turn, depends on whether a jury must unanimously agree on which of the seven statutory alternatives a defendant committed to return a conviction. *See id.* at 2248 ("'Elements' are the 'constituent parts' of a crime's legal definition—the things

---

[7] In his briefing, Robinson does not provide any examples of how a person might "assault another" with "intent to commit a felony" but without using violent force. One example might be where a person touches a minor's body in a sexual manner. *See* Wash. Rev. Code § 9A.44.083 (providing that a person commits felony of first-degree child molestation if he "has . . . sexual contact with another who is less than twelve years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim"); *State v. Smith*, 154 P.3d 873, 875 (Wash. 2007) (en banc) (defining "assault" as, *inter alia*, "an intentional touching . . . that is harmful or offensive regardless of whether any physical injury is done to the person").

[8] In its answering brief, the government states: "Because Washington's second-degree assault statute includes one variant that does not require 'physical force' within the meaning of *Johnson* (subsection (1)(e)), the statute as a whole does not categorically define a crime of violence under a *Taylor* analysis."

the 'prosecution must prove to sustain a conviction.' At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." (citations omitted)). If jury unanimity is required, then the alternatives are elements, and under the "modified" categorical approach, we may analyze subsection (1)(a) in isolation to determine whether it is categorically a crime of violence. *See id.* at 2248–50. By contrast, if a jury could return a conviction *without* agreeing on which particular statutory alternative applied, then the statute is indivisible and does not categorically define a crime of violence.

We begin, as *Mathis* instructs, with the text of section 9A.36.021. *See id.* at 2256 ("[A] statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)."). Nothing here clarifies whether the seven alternatives are elements or means. The statute does not explicitly state whether a jury could return a conviction without agreeing unanimously on a particular alternative. Moreover, because all of the alternatives carry the same punishment,[9] the Due Process Clause does not require that any such agreement be reached. *See id.* (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Next, we turn to state decisional law. We find clearer guidance here. For example, in *State v. Smith*, 154 P.3d 873 (Wash. 2007) (en banc), the Washington Supreme Court

---

[9] *See* §§ 9A.36.021(2), 9A.20.020(1)(a)–(b) (providing that second-degree assault is a class B felony, punishable by up to ten years' imprisonment, unless it involves "sexual motivation," in which case it is a class A felony, punishable by up to a lifetime term of imprisonment).

stated that "the second degree criminal assault statute articulates a *single criminal offense* and then provides six separate subsections by which the offense may be committed." *Id.* at 876 (emphasis added) (footnote omitted) (citing Wash. Rev. Code § 9A.36.021(1)(a)–(f)).[10] The court explained that "[e]ach of these six subsections represents an *alternative means* of committing the crime of second degree assault." *Id.* (emphasis added). And a few paragraphs earlier, it noted that "when the crime charged can be committed by *more than one means*, the defendant does not have a right to a unanimous jury determination as to the alleged means used to carry out the charged crime." *Id.* at 875 (emphasis added). Taking these statements together, *Smith* stands for the proposition that a jury need not unanimously agree on which of the "alternative means" listed in § 9A.36.021(1) the defendant committed.

Later Washington cases buttress this conclusion. In *State v. Peterson*, 230 P.3d 588 (Wash. 2010) (en banc), for example, the Washington Supreme Court cited its decision in *Smith* for the proposition that "[a]n alternative means crime is one 'that provide[s] that the proscribed criminal conduct may be proved in a variety of ways.'" *Id.* at 591 (some alterations in original) (quoting *Smith*, 154 P.3d at 873). Similarly, the Washington Supreme Court has stated that "when there is sufficient evidence to support each of the alternative means of committing the crime, express jury unanimity as to which means is not required." *State v. Owens*, 323 P.3d 1030, 1032 (Wash. 2014) (en banc).

---

[10] Section 9A.36.021(1) has since been amended to include a seventh subdivision, which prohibits "[a]ssault[] . . . by strangulation or suffocation." *Id.* § 9A.36.021(1)(g).

Washington's pattern jury instructions for criminal cases ("WPIC") also demonstrate that section 9A.36.021(1) lists alternative "means."[11] WPIC 35.12 is entitled "Assault—Second Degree (Alternate Means)—Inflict Substantial Bodily Harm Or With Deadly Weapon—Elements." WPIC 35.12 states, in relevant part:

> To convict the defendant of the crime of assault in the second degree, each of the following two elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about (date), the defendant:
>
> [(a) intentionally assaulted (name of person) and thereby recklessly inflicted substantial bodily harm;] [or]
>
> [(b) assaulted (name of person) with a deadly weapon;] and
>
> (2) That this act occurred in the State of Washington.
>
> If you find from the evidence that element (2) and either alternative element (1)(a) or (1)(b) have been proved beyond a reasonable doubt,

---

[11] These jury instructions are drafted by the Washington State Supreme Court's Pattern Instructions Committee. *See Pattern Jury Instructions*, https://www.courts.wa.gov/index.cfm?fa=home.contentDisplay&location=PatternJuryInstructions (last visited August 15, 2017). Though the instructions are "often treated as persuasive," they are "not authoritative primary sources of the law" and are "not binding on trial courts." *See* WPIC 0.10 (Introduction to Washington's Pattern Jury Instructions for Criminal Cases) (internal quotation marks omitted).

> then it will be your duty to return a verdict of
> guilty. *To return a verdict of guilty, the jury
> need not be unanimous as to which of
> alternatives (1)(a) or (1)(b) has been proved
> beyond a reasonable doubt, as long as each
> juror finds that either (1)(a) or (1)(b) has
> been proved beyond a reasonable doubt.*

(emphasis added) (brackets in original). According to the
instruction, a jury can convict a defendant of assault in the
second degree without unanimously agreeing on whether the
defendant violated subsection (1)(a) (intentional assault
which recklessly inflicts substantial bodily harm) or
subsection (1)(c) (assault with a deadly weapon).[12] This
instruction suggests that the listed alternatives are means, not
elements, and that section 9A.36.021(1) is therefore
indivisible.

---

[12] For example, suppose that a defendant were charged with second-
degree assault in connection with the beating of a victim in a dark
alleyway. The victim testifies that although he couldn't see whether his
assailants were brandishing weapons, it felt like he was being punched
and kicked. Moreover, the victim testifies that his assailants struck him
in the face and broke his nose.

An accomplice to the beating testifies (perhaps in exchange for
immunity) that the defendant in fact struck the victim with a baseball
bat—a deadly weapon—but that the defendant never struck the victim in
the face and hence could not have broken the victim's nose. If six jurors
believed the victim's testimony—that the defendant had not used a
deadly weapon but had recklessly inflicted substantial bodily harm by
breaking the victim's nose—and six jurors believed the accomplice's
testimony—that the defendant had used a deadly weapon during the
assault but had not recklessly inflicted substantial bodily harm—the jury
could nonetheless return a conviction, because subsections (1)(a) and
(1)(c) are means, not elements, of the crime of second-degree assault.

The government's arguments that section 9A.36.021(1) lists alternative elements of separate crimes are unpersuasive. First, the government argues that *State v. Fuller*, 367 P.3d 1057 (Wash. 2016) (en banc), supports its interpretation of the statute. In that case, the Washington Supreme Court stated that:

> [W]hen the State charges alternative means of committing an offense in separate counts and the jury acquits on one count but deadlocks on the other, the State may retry the defendant on the count on which the jury was declared hung. Retrial on that count does not violate the prohibition against double jeopardy because jeopardy never terminated as to that count or as to the overall offense.

*Id.* at 1063. The government contends that *State v. Fuller* establishes that the listed alternatives in section 9A.36.021(1) are not "alternative means" as that term is used in *Taylor*, *Descamps*, and *Mathis* because if they were, double jeopardy would have barred retrial.

*Fuller*'s analysis, however, demonstrates that the listed alternatives are in fact "alternative means." The *Fuller* court first stated that section 9A.36.021 is a "single criminal offense" with "seven separate subsections defining how the offense may be committed." 367 P.3d at 1059 (footnote omitted). It then noted that:

> [W]hether a case involves separate counts based on alternative means or a single count with two alternative means does not change the double jeopardy analysis [because] . . . a defendant charged and tried under multiple statutory alternatives experiences the same

> jeopardy as one charged and tried on a single theory. The defendant is in jeopardy of a single conviction and subject to a single punishment, whether the state charges a single alternative or several.

*Id.* at 1059–60 (citations, alterations, and internal quotation marks omitted). Because the court concluded that charging a defendant with violations of multiple subsections of section 9A.36.021(1) puts the defendant "in jeopardy of a single conviction and subject to a single punishment," *Fuller* demonstrates that section 9A.36.021(1) lists alternative means of proving a single crime, not alternative elements of separate crimes. *See id.*

Second, the government cites *State v. Kitchen*, 756 P.2d 105 (Wash. 1988) (en banc), *abrogated on other grounds as recognized in In re Stockwell*, 316 P.3d 1007 (Wash. 2014) (en banc), for the proposition that "[i]n an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged." *Id.* at 109. But the very next sentence of *Kitchen* shows that the case in fact stands for the proposition that jury unanimity is not required as to each particular means in an alternative-means case: "Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means." *Id.* The government argues that the fact that "substantial evidence" is required for each alternative "is more proof these alternatives are functionally separate crimes." But the Supreme Court has never held that a requirement that "substantial evidence" support each relied-upon statutory alternative demonstrates that the statutory alternatives are separate crimes. Instead, what matters is

whether a jury must agree *unanimously* on a particular listed alternative.

In sum, we conclude that section 9A.36.021 defines a single crime—second-degree assault—and provides seven different "means" by which a person can commit that crime. The statute is therefore indivisible. Moreover, because section 9A.36.021 covers more conduct than the generic federal definition of a crime of violence under Guidelines section 2K2.1, it does not define a crime that categorically satisfies that definition. Thus, the district court erred in concluding that Robinson's prior second-degree assault conviction was for a crime of violence.

## IV. Conclusion

For the foregoing reasons, we **VACATE** Robinson's sentence and **REMAND** for resentencing.