**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee*,

v.

ROBERT LAWRENCE VEDEROFF,
                *Defendant-Appellant.*

No. 17-30096

D.C. No.
2:16-cr-00325-
RSL-1

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, District Judge, Presiding

Argued and Submitted November 6, 2018
Seattle, Washington

Filed February 1, 2019

Before: M. Margaret McKeown and Michelle T. Friedland,
Circuit Judges, and Fernando J. Gaitan, Jr.,[*] District Judge

Opinion by Judge Gaitan

---

[*] The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel vacated a sentence and remanded for resentencing in a case in which the defendant pleaded guilty to being a felon in possession of a firearm.

The panel held that second-degree assault under Wash. Rev. Code § 9A.36.021(1) is overbroad when compared to the generic definition of aggravated assault because only the former encompasses assault with intent to commit a felony. Because Washington's second-degree assault statute is indivisible, the panel could not apply the modified categorical approach, and therefore concluded that Washington second-degree assault does not qualify as a "crime of violence" under the enumerated clause of U.S.S.G. § 4B1.2.

The panel held that second-degree murder under Wash. Rev. Code § 9A.32.050 (2003) is overbroad when compared to the generic definition of murder because only the former covers felony murder. Because Washington's second-degree murder statute is indivisible, the panel could not apply the modified categorical approach, and therefore concluded that Washington second-degree murder is not a "crime of violence" under the enumerated clause of § 4B1.2.

The panel held that second-degree murder under § 9A.32.050 (2003) is overbroad as compared to a generic

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

crime of violence because the former imposes liability for negligent or even accidental felony murder. Because the Washington statute is indivisible, the panel could not apply the modified categorical approach, and therefore concluded that Washington second-degree murder is not a "crime of violence" under the force/elements clause of § 4B1.2(a)(2).

The panel held that the district court's sentencing errors were not harmless.

## COUNSEL

Alan Zarky (argued), Staff Attorney; Mohammad Ali Hamoudi, Assistant Federal Public Defender; Office of the Federal Public Defender, Seattle, Washington; for Defendant-Appellant.

Helen J. Brunner (argued), Assistant United States Attorney; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Plaintiff-Appellee.

## OPINION

GAITAN, District Judge:

Robert Vederoff appeals the sentence imposed following his guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He challenges the district court's findings that his prior convictions for second-degree assault and second-degree murder under Washington law qualify as "crimes of violence" under section 4B1.2(a) of the United States Sentencing Guidelines ("U.S.S.G."). For the

following reasons, we vacate and remand for further proceedings consistent with this Opinion.

## I. BACKGROUND

Vederoff was charged with and pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g).[1] As part of his written plea agreement, Vederoff acknowledged receiving each of the felony convictions listed in the indictment, including one conviction for second-degree assault and one conviction for second-degree murder, both under Washington law.

Before sentencing, the United States Probation Office issued a Presentence Report ("PSR"). The PSR set the base offense level at 24, under U.S.S.G. § 2K2.1, concluding that Vederoff's prior convictions for second-degree assault and second-degree murder qualified as "crimes of violence." After a three-level downward adjustment for acceptance of responsibility, the PSR set Vederoff's total offense level at 21. The PSR calculated Vederoff's criminal history score as 13, and his criminal history category as VI. Accordingly, Vederoff's recommended Guidelines range was 77 to 96 months. The probation officer, however, recommended a 60-month sentence, balancing mitigating and aggravating factors in Vederoff's history.

Vederoff objected to either of these convictions counting as "crimes of violence" under U.S.S.G. § 4B1.2(a). He argued that, without the crimes of violence, the base offense

---

[1] He was also charged with being a felon in possession of ammunition, 18 U.S.C. § 922(g), but that charge was dropped pursuant to the plea agreement.

level should be 14, and after adjustment for acceptance of responsibility, the Guidelines range would be 27 to 33 months.[2] Vederoff requested a sentence of 27 months of imprisonment, the lowest end of his proposed range. The government agreed with the PSR's crime of violence findings and recommended a sentence of 72 months of imprisonment, five months below the low end of the Guidelines range if both convictions counted as crimes of violence.

On May 5, 2017, the district court sentenced Vederoff to 60 months in custody after concluding that both convictions were crimes of violence. In explaining its decision, the district court stated:

> So on the, you know, the [*United States v. Johnson*, 135 S. Ct. 2551 (2015),] issues — and we're still in a state of flux on this — it drives me absolutely nuts as a trial judge to think that things like murder and assault with a deadly weapon could be conceived as not being crimes of violence, but these are highly technical rulings from courts that predominantly don't have people who have ever been in a trial court, let alone been a trial-court lawyer or trial-court judge.

> But my analysis of this is that they are both countable crimes of violence, and it is an

---

[2] This calculation was incorrect: a three-level adjustment for acceptance of responsibility is only available for base offenses of 16 or greater. With a base offense level of 14, Vederoff would be entitled to a two-level adjustment. *See* U.S.S.G. § 3E1.1(a). The resulting Guideline range would be 30 to 37 months.

offense level 21, Criminal History Category VI, 77 to 96 range. If [defense counsel] is correct, it would be a level 14, Criminal History Category VI, with a 37 to 46 range.

Either way, looking at the factors, I really believe the right sentence is a five-year prison term. So I'm going to impose a 60-month prison term. It's either a departure downward from a range that's too high or a departure upward from a range that's too low. But the murder and the assault two are, in the Court's opinion, countable under the analysis of being a divisible crime in the assault two, and that the ways to commit aiding and abetting felony murder have to comport with the national standard of doing something active to join in a felony that's a serious felony, not some sort of hypothetical minor felony. It has to be during the commission of a dangerous felony or through conduct evincing reckless or depraved indifference to the serious dangers. But as I say, the range is not as important to me as what is the right sentence for this individual under these circumstances, and I think for the deterrent effect and the punishment effect, five years is correct for the prison term.[3]

Vederoff timely appealed his sentence.

---

[3] The calculation of a 37 to 46 month range was incorrect. As noted, the correct Guideline range if neither conviction counted as a crime of violence was 30 to 37 months. *See supra* note 2.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo whether a predicate state conviction constitutes a crime of violence under the Guidelines. *United States v. Robinson*, 869 F.3d. 933, 936 (9th Cir. 2017). We apply a harmless error analysis to Guideline calculations. *United States v. Munoz-Camarena*, 631 F.3d 1028, 1031 (9th Cir. 2011).

## III. DISCUSSION

Under U.S.S.G. § 2K2.1, Vederoff had a base offense level of 24 if he had two or more felony convictions that qualify as a "crime of violence." U.S.S.G. § 2K2.1(a)(2). If he had one, his base offense level would be 20, and if he had none, his base offense level would be 14. U.S.S.G. § 2K2.1(a)(4), (6). "For the purposes of this guideline . . . 'Crime of violence' has the meaning given that term in § 4B1.2(a) and Application Note 1 of the Commentary to § 4B1.2." U.S.S.G. § 2K2.1 cmt. n.1. At the time of Vederoff's offense and his sentencing, section 4B1.2(a), the career offender guideline, defined "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
>
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> >
> > (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, . . . .

U.S.S.G. § 4B1.2(a).  The first part of this definition is the "force/elements clause," and the second is the "enumerated clause."    The commentary clarified that "crime[s] of violence . . . include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2 cmt. n.1.

To determine whether a prior state conviction qualifies as a crime of violence, we apply the "categorical approach." *Robinson*, 869 F.3d at 936; *see also Taylor v. United States*, 495 U.S. 575, 600 (1990) (first articulating the approach in the context of the Armed Career Criminal Act's ("ACCA") "violent felony" provision).  Under this approach, we define the scope of the generic federal offense at issue, and then compare its elements to the elements of the state criminal statute.  *United States v. Arriaga-Pinon*, 852 F.3d 1195, 1198–99 (9th Cir. 2017).  If the state statute is identical to or narrower than the generic federal offense, then the predicate conviction is a crime of violence.  *Robinson*, 869 F.3d at 936. If the state statute is overbroad (i.e., criminalizes any conduct not covered by the generic offense), we must determine whether the statute is divisible (i.e., whether it has alternative elements).  *Arriaga-Pinon*, 852 F.3d at 1199.  If it is indivisible, the inquiry ends: the predicate conviction is not a crime of violence.  If the state statute is divisible, then we apply the "modified categorical approach," which permits examination of the indictment, jury instructions, and/or plea agreements to determine which of the alternative elements were the basis of the conviction.  *Id.* at 1199–1200. The state conviction is a crime of violence if those elements serving as the basis of the conviction are identical to or narrower than the elements of the generic federal offense. Throughout, "we must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized"

by the state statute. *Moncrieffe v. Holder*, 569 U.S. 184, 191–92 (2013) (alterations in original) (citation omitted).

## A. The Washington crime of second-degree assault does not qualify as a "crime of violence" under U.S.S.G. § 4B1.2.

Under Washington law,

> [a] person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:
>
> > (a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm; or
> >
> > (b) Intentionally and unlawfully causes substantial bodily harm to an unborn quick child by intentionally and unlawfully inflicting any injury upon the mother of such child; or
> >
> > (c) Assaults another with a deadly weapon; or
> >
> > (d) With intent to inflict bodily harm, administers to or causes to be taken by another, poison or any other destructive or noxious substance; or
> >
> > (e) With intent to commit a felony, assaults another; or
> >
> > (f) Knowingly inflicts bodily harm which by design causes such pain or agony as to

> be the equivalent of that produced by torture; or
>
> (g) Assaults another by strangulation or suffocation.

Wash. Rev. Code § 9A.36.021(1). In *Robinson*, we held that second-degree assault in Washington is not a crime of violence under the force/elements clause. 869 F.3d at 937–41. However, *Robinson* did not decide whether it is a crime of violence under the enumerated clause.[4] We must do so here.

For the purposes of defining federal assault, the government urges us to adopt the following definition of "aggravated assault" found in an unrelated section of the Guidelines:

> a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; or (D) *an intent to commit another felony*.

U.S.S.G. § 2A2.2, cmt. n.1 (emphasis added). We decline to do so. The introductory provisions of the Guidelines warn that, while definitions "also may appear in other sections," those definitions "are not designed for general applicability." U.S.S.G. § 1B1.1, cmt. n.2. Instead, "their applicability to

---

[4] While *Robinson* addressed an earlier version of the Guidelines, the force/elements clause at issue there was same. 869 F.3d at 937–41. "Aggravated assault" was not listed in the enumerated clause in the earlier version of the Guidelines.

sections other than those expressly referenced must be determined on a case by case basis." *Id.* In other cases, when a section of the Sentencing Guidelines did not plainly identify the elements of a federal offense, we looked to the generic definition of that offense, rather than importing a specific definition located in an unrelated section of the Guidelines. *See United States v. Gonzalez-Perez*, 472 F.3d 1158, 1161 (9th Cir. 2007); *see also United States v. Esparza-Herrera*, 557 F.3d 1019, 1022–25 (9th Cir. 2009) (defining the generic offense of "aggravated assault" for the purposes of U.S.S.G. § 2L1.2 by reference to the Model Penal Code, treatises, and various state laws, rather than using U.S.S.G. § 2A2.2); *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085–87 (9th Cir. 2015) (clarifying the generic offense of "aggravated assault" for the purposes of U.S.S.G. § 2L1.2 by reference to the criminal statutes of a substantial majority of U.S. jurisdictions).

Accordingly, in this case we compare the definition of "aggravated assault" under Washington law to the generic definition of aggravated assault. The least culpable means within the Washington statute is assault with intent to commit a felony, Wash. Rev. Code § 9A.36.021(1)(e), so we must determine whether the generic definition of aggravated assault covers such conduct. Our review of the common law,[5] the Model Penal Code, treatises, and the laws of the other states, *see Esparza-Herrera*, 557 F.3d at 1022–25, compels the conclusion that generic aggravated assault does not include assault with intent to commit a felony. The Model Penal Code defines aggravated assault as assault causing or attempting to cause bodily injury "under

---

[5] Common law does not aid our interpretation here because "aggravated assault" is a statutory creation. *See* 2 Wayne R. LaFave, *Substantive Criminal Law* § 16.1(b) (3d ed. 2018).

circumstances manifesting extreme indifference to the value of human life" or with a deadly weapon.  Model Penal Code § 211.1(2).  It does not include assault with intent to commit another felony.

With respect to the laws of the states, only six states (including Washington) and the District of Columbia include assault with intent to commit *any* felony within their assault statutes (whether titled "aggravated" assault or not).[6]  In 11 states, aggravated assault includes assault with the intent to commit a narrower set of specific felonies[7] or assault committed during the commission of a felony.[8]  In 33 states, aggravated assault *never* includes assault with the intent to commit a felony.[9]  Second-degree assault under Washington

---

[6] Fla. Stat. § 784.021; Kan. Stat. Ann. § 21-5412; Mass. Gen. Laws ch. 265, § 29; Mich. Comp. Laws § 750.87; N.M. Stat. Ann. § 30-3-2; Wash. Rev. Code § 9A.36.021; D.C. Code §§ 22-403, 22-404.01.

[7] Cal. Penal Code §§ 220, 245; Ga. Code Ann. § 16-5-21; N.C. Gen. Stat. § 14-32; 11 R.I. Gen. Laws §§ 11-5-1, 11-5-2; Va. Code Ann. § 18.2–51.2.

[8] Ala. Code § 13A-6-20; Del. Code Ann. tit. 11, § 613; Iowa Code § 708.3; N.Y. Penal Law § 120.10; S.C. Code Ann. § 16-3-600; W. Va. Code § 61-2-10.

[9] Alaska Stat. § 11.41.200; Ariz. Rev. Stat. Ann. § 13-1204; Ark. Code Ann. § 5-13-204; Colo. Rev. Stat. § 18-3-202; Conn. Gen. Stat. § 53A-59; Haw. Rev. Stat. § 707-711; Idaho Code § 18-905; 720 Ill. Comp. Stat. 5/12-2; Ind. Code § 35-42-2-1.5; Ky. Rev. Stat. Ann. § 508.010; La. Stat. Ann. §§ 14:34, 14:34.7; Me. Rev. Stat. Ann. tit. 17-A, § 208; Md. Code Ann., Crim. Law § 3-202; Minn. Stat. §§ 609.02, 609.221, 609.222, 609.223, 609.2233; Miss. Code Ann. § 97-3-7; Mo. Rev. Stat. § 565.050; Mont. Code Ann. § 45-5-202; Neb. Rev. Stat. §§ 28-308, 28-309; Nev. Rev. Stat. § 200.471; N.H. Rev. Stat. Ann. § 631:1, 631:2; N.J. Stat. Ann. § 2C:12-1; N.D. Cent. Code § 12.1-17-02; Ohio Rev. Code Ann. § 2903.12; Okla. Stat. tit. 21, § 646; Or. Rev.

law clearly covers a broader range of conduct than generic aggravated assault. We have previously concluded that Washington's second-degree assault statute is indivisible, *Robinson*, 869 F.3d at 941, so we cannot apply the modified categorical approach here. Contrary to the conclusion reached by the district court, second-degree assault under Washington law is not a "crime of violence" under U.S.S.G. § 4B1.2.

## B. The Washington crime of second-degree murder does not qualify as a "crime of violence" under U.S.S.G. § 4B1.2.

At the time of Vederoff's offense, Washington law defined second-degree murder as when:

> (a) With intent to cause the death of another person but without premeditation, he or she causes the death of such person or of a third person; or
>
> (b) He or she commits or attempts to commit any felony, including assault, other than those enumerated in RCW 9A.32.030(1)(c) [Washington's first-degree murder statute], and, in the course of and in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants; except that in any prosecution

---

Stat. §§ 163.175, 163.185; 18 Pa. Cons. Stat. § 2702; S.D. Codified Laws § 22-18-1.1; Tenn. Code Ann. § 39-13-102; Tex. Penal Code Ann. § 22.02; Utah Code Ann. § 76-5-103; Vt. Stat. Ann. tit. 13, § 1024; Wis. Stat. § 940.19; Wyo. Stat. Ann. § 6-2-502.

under this subdivision (1)(b) in which the defendant was not the only participant in the underlying crime, if established by the defendant by a preponderance of the evidence, it is a defense that the defendant:

(i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and

(ii) Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and

(iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

(iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

Wash. Rev. Code § 9A.32.050 (2003). We must now determine whether a conviction under this statute is a crime of violence under either the enumerated clause or force/elements clause of U.S.S.G. § 4B1.2.

## 1.  Enumerated clause

We have not adopted a definition for generic murder. After surveying the Model Penal Code, dictionary definitions, and state laws, the Third Circuit defined generic

murder as "causing the death of another person either intentionally, during the commission of a dangerous felony, or through conduct evincing reckless and depraved indifference to serious dangers posed to human life." *United States v. Marrero*, 743 F.3d 389, 401 (3d Cir. 2014), *abrogated on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015); *see also United States v. Castro-Gomez*, 792 F.3d 1216, 1217 (10th Cir. 2015) (citing approvingly to *Marrero*). We adopt that definition here.

The least culpable means of committing second-degree murder in Washington is under the felony murder provision, so we must determine whether generic murder also covers such conduct. Under Washington law, the underlying felony can be any felony—unlike felony murder in the Third Circuit's definition of generic murder, it is not limited to dangerous felonies. Washington's felony murder provision is an outlier among the states: seven do not impose felony murder liability at all. Guyora Binder, *Making the Best of Felony Murder*, 91 B.U. L. Rev. 403, 440 (2011) (citing to Arkansas, Hawaii, Kentucky, Michigan, New Hampshire, New Mexico, and Vermont). In the jurisdictions that do impose felony murder liability, unlike Washington, a majority enumerate the predicate felonies in their statute. *See id.* at 450 n.262 (citing to 18 U.S.C. § 1111 and Alaska, Arizona, Colorado, Connecticut, District of Columbia, Idaho, Indiana, Iowa, Kansas, Louisiana, Maine, Nebraska, New Jersey, New York, North Dakota, Ohio, Oregon, Pennsylvania, South Dakota, Tennessee, Utah, West Virginia, Wisconsin, and Wyoming). In the jurisdictions without exhaustively enumerated predicate felonies, almost all require that the predicate offense be a dangerous felony. *See id.* at 466–82 (discussing Alabama, California, Delaware, Georgia, Illinois, Maryland, Massachusetts, Minnesota, Missouri, Montana, Nevada, North Carolina,

Oklahoma, Rhode Island, South Carolina, Texas, and Virginia).  Only three states (including Washington) allow felony murder to be predicated on non-enumerated offenses lacking a dangerousness requirement.  *See id.* at 478 (explaining that Florida and Mississippi are the two other jurisdictions).  Furthermore, the Model Penal Code limits felony murder to deaths resulting from conduct involving certain specified dangerous offenses.  Model Penal Code § 210.2(1)(b).

The government insists that any concerns regarding the breadth of the statute are hypothetical.  *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (requiring "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime").  Facial overbreadth like that here, however, is a basis for finding a statute overbroad. *See United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007) (en banc) (holding that where "a state statute explicitly defines a crime more broadly than the generic definition, no 'legal imagination,' is required to hold that a realistic probability exists that the state will apply its statute to conduct that falls outside the generic definition of the crime" (citing *Duenas-Alvarez*, 549 U.S. at 193)).

Washington's second-degree murder statute is therefore overbroad when compared with the definition of generic murder, as well as the Model Penal Code and the laws of other jurisdictions.  We next turn to whether this statute is divisible.  Because the plain language of the statute does not resolve this question, we look to state decisional law. *Robinson*, 869 F.3d at 938.  Washington courts have concluded that the statute is indivisible, and we adopt their interpretation here.  *See, e.g.*, *State v. Berlin*, 947 P.2d 700, 705–06 (Wash. 1997) (holding that this statute defines a

"single crime, which can be committed by alternative means" and therefore, "the State is not required to elect between the alternative means of committing second degree murder"); *see also State v. Lizarraga*, 364 P.3d 810, 828 (Wash. Ct. App. 2015) (concluding that this statute contains alternative means, not alternative elements). As above, we cannot apply the modified categorical approach. Contrary to the conclusion reached by the district court, second-degree murder under Washington law is not a crime of violence under the enumerated clause of U.S.S.G. § 4B1.2(a)(2).

### 2.  Force/elements clause

The government argues for the first time on appeal that second-degree murder qualifies as a crime of violence under the force/elements clause. We need not determine whether it has waived or forfeited this claim, because it is apparent that the argument fails on the merits. The generic "crime of violence" includes the following elements: (i) the crime has "as an element the use, attempted use, or threatened use of physical force against [a] person," (ii) the "physical force" must be "violent" or otherwise "capable of causing physical pain or injury to another person," and (iii) the "use of force must be intentional, not just reckless or negligent." U.S.S.G. § 4B1.2(a)(1); *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir. 2015) (defining "violent felony" under ACCA's force/elements clause); *United States v. Ladwig*, 432 F.3d 1001, 1005 n.9 (9th Cir. 2005) (noting that requirements for the ACCA's "violent felony" and the Guidelines' "crime of violence" are "identical"). On the other hand, Washington law imposes liability for negligent or even accidental felony murder. *See, e.g.*, *State v. Leech*, 790 P.2d 160, 164 (Wash. 1990) ("The purpose of the felony murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit."). The

statute is therefore overbroad as compared to a generic crime of violence. As noted above, we cannot apply the modified categorical approach because this statute is indivisible. Second-degree murder under Washington law is not a crime of violence under the force/elements clause of U.S.S.G. § 4B1.2(a)(2).[10]

## C. The sentencing errors were not harmless.

Even when the district court indicates it would impose the same sentence regardless of the proper Guidelines range, we have held that "[a] mistake in calculating the recommended Guidelines sentencing range is a significant procedural error that requires us to remand for resentencing." *Munoz-Camarena*, 631 F.3d at 1030. "[T]he district court must correctly calculate the recommended Guidelines sentence and use that recommendation as the 'starting point and the initial benchmark.' . . . [T]he recommended Guidelines range must 'be kept in mind throughout the process.'" *Id.* (citations omitted). We require that the "district court [ ] start with the recommended Guidelines sentence, adjust upward or downward from that point, and justify the extent of the departure from the Guidelines sentence." *Id.* (citation omitted). "A district court's mere statement that it would impose the same above-Guidelines sentence no matter what the correct calculation cannot, without more, insulate the sentence from remand,

---

[10] Because we conclude that Vederoff's convictions for second-degree murder and second-degree assault do not constitute crimes of violence, we need not determine whether accomplice liability under Washington law is categorically broader than federal aiding and abetting liability, under the reasoning in *United States v. Valdivia-Flores*, 876 F.3d 1201, 1207-09 (9th Cir. 2017), such that *no* Washington conviction qualifies as a crime of violence.

because the court's analysis did not flow from an initial determination of the correct Guidelines range." *Id.* at 1031.

Here, it appears that the district court started with the presumption that a 60-month sentence was the correct one, and it attempted to justify it as either a downward departure from the Guidelines calculation he accepted at sentencing or an upward departure from the Guidelines calculation advocated by defense counsel. Having now determined that the proper Guideline range would be 30 to 37 months, we cannot say that the district court's incorrect calculation of the proper Guideline range was harmless. The explanation given by the district court does not explain why the court imposed a sentence nearly double the Guideline range. Nor does it demonstrate that the district court would impose the same sentence if the correct Guidelines range were "kept in mind throughout the process." *Id.* at 1030 (citation omitted). Moreover, the explanation provided by the district court does not account for the amount or direction of the departure; the mitigating factors discussed by the district court could also have warranted a downward variance from the proper Guideline range. This case must therefore be remanded for resentencing with the correct Guidelines range in mind. *United States v. Brown*, 879 F.3d 1043, 1051 (9th Cir. 2018) ("The use of an incorrect starting point and the failure to keep the proper Sentencing Guidelines range in mind as the sentencing decision was made constituted 'a significant procedural error,' and the case must be remanded for resentencing." (quoting *Munoz-Camarena*, 631 F.3d at 1030)).

**SENTENCE VACATED, REMANDED FOR RESENTENCING.**