NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0152n.06

No. 22-5278

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Apr 03, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>    Plaintiff-Appellee, )<br>)<br>v. )<br>)<br>TODJI KIJUAN MARTIN, )<br>)<br>    Defendant-Appellant. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE<br><br>OPINION |

Before: MOORE, CLAY, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Todji Kijuan Martin was classified as a career offender for sentencing purposes based on two prior felony convictions of a crime of violence or a controlled substance offense, including a 2008 conviction for attempted second degree murder in Tennessee. Second degree murder was then defined as (1) a knowing killing of another, or (2) a killing of another resulting from the unlawful distribution of certain drugs. Tenn. Code § 39-13-210(a) (2008). Martin challenged the career offender designation at sentencing, but the district court concluded that attempted second degree murder in Tennessee is a crime of violence under the Sentencing Guidelines, applied the career offender sentencing enhancement, and sentenced Martin to 151 months' imprisonment. Martin appeals that determination and requests resentencing. Because Tennessee's second degree murder statute is divisible, and the subsection of the statute that Martin was convicted under requires some use of force or attempted use of force, we **AFFIRM**.

## I.   BACKGROUND

Martin was charged in 2019 with seven counts of possession with intent to distribute a mixture and substance containing a detectable amount of heroin, and one count of conspiracy to possess with the same intent, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. He entered into a written plea agreement on July 8, 2021. He pleaded guilty to five counts of possession with intent to distribute, and the United States agreed to dismiss the remaining counts. Under the agreement's terms, if Martin was determined to be a career offender under USSG § 4B1.1 for purposes of sentencing, he retained the right to appeal that finding.

The Pre-Sentence Investigation Report (PSR) generated for sentencing classified Martin as a career offender based on "at least two prior felony convictions of either a crime of violence or a controlled substance offense," USSG § 4B1.1, placing him in criminal category VI with a guidelines range of 151 to 188 months' imprisonment. Martin's two qualifying convictions were a 2007 conviction for possession with intent to distribute cocaine base (which he does not dispute was a controlled substance offense under the Guidelines) and a 2008 conviction for attempted second degree murder in Tennessee. At the time of his conviction, the Tennessee second degree murder statute defined the offense as: "(1) A knowing killing of another; or (2) A killing of another that results from the unlawful distribution of any Schedule I or Schedule II drug, when the drug is the proximate cause of the death of the user." Tenn. Code § 39-13-210(a) (2008).

Martin objected to the PSR on the grounds that he was not a career offender and should have been sentenced under a lower Guidelines range. According to Martin, attempted second degree murder in Tennessee was not a predicate offense for purposes of career offender designation because it was not categorically a crime of violence. The Government's response to Martin's objections included as exhibits the indictment and judgment in the Tennessee attempted second

degree murder case, and the probation office filed an addendum to the PSR explaining that Martin had committed attempted second degree murder by trying to kill someone knowingly, not by distributing a Schedule I or II drug.

At Martin's sentencing hearing, the district court concluded that: attempted second degree murder in Tennessee was a crime of violence under the Guidelines because the statute was divisible (meaning that it was written disjunctively); documents showed that Martin had been convicted under the "knowing killing" subsection of the statute; and an attempted knowing killing required some use of force or attempted use of force. The district court overruled Martin's objection and found that he was properly classified as a career offender under USSG § 4B1.1. After calculating the advisory Guidelines range (151 to 188 months' imprisonment) and considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Martin to 151 months' imprisonment. Martin timely appeals, arguing that the district court erred in applying the career offender sentencing enhancement and that, setting the enhancement aside, the district court imposed an unreasonable sentence.

## II.   ANALYSIS

### A.   Career Offender Classification

Because Martin challenged his career offender classification below, we review de novo the district court's determination that his prior conviction is a crime of violence. *United States v. Fields*, 53 F.4th 1027, 1035 (6th Cir. 2022). He argues that: (1) the district court erred in concluding that the Tennessee second degree murder statute is divisible; (2) even if the district court properly concluded that the statute is divisible, the documents the district court considered do not support its conclusion that attempted second degree murder is a crime of violence; and

(3) regardless, *United States v. Taylor*, 142 S. Ct. 2015 (2022), puts an end to any claim that an attempt crime can serve as a predicate offense for career offender designation.

Generally, a defendant is considered a career offender under the Sentencing Guidelines if, among other requirements, he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). A crime of violence is any felony that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another," or (2) is one of a list of enumerated offenses including murder and voluntary manslaughter. USSG § 4B1.2(a). These two clauses are respectively known as the elements and enumerated clauses. Because the Guidelines elements clause "mirrors the elements clause in the Armed Career Criminal Act [ACCA]," "we typically interpret them the same way" and may rely on ACCA cases in our analysis. *United States v. Harris*, 853 F.3d 318, 320 (6th Cir. 2017).

In determining whether a state criminal conviction qualifies as a crime of violence, the court must decide "whether the elements of the offense require that the defendant engage in the conduct defined" by the Guidelines. *United States v. Cavazos*, 950 F.3d 329, 335 (6th Cir. 2020) (emphasis omitted). "This categorical inquiry means we look only to the elements of the offense set forth in the statute itself, rather than the particular facts of the defendant's case." *Id.* (citing *Taylor v. United States*, 495 U.S. 575, 602 (1990)). But if a statute is divisible—*i.e.*, it "sets out one or more elements of the offense in the alternative"—the court applies the modified categorical approach and may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative formed the basis of the defendant's prior conviction." *Descamps v. United States*, 570 U.S. 254, 257 (2013). "The court can then do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used

in the case) with the elements of the generic crime." *Id.* If the elements of the conviction are the same or narrower, it constitutes a crime of violence.

### 1. Divisibility of Tennessee's Second Degree Murder Statute

Statutes that have "multiple alternative elements" are divisible and therefore subject to the modified categorical approach. *Mathis v. United States*, 579 U.S. 500, 505 (2016). Statutes are not divisible, however, where they merely "enumerate[] various factual *means* of committing a single element" of the offense. *Id.* at 506 (emphasis added) ("[S]uppose a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, gun, bat, or similar weapon' would all qualify. . . . [A] jury need not find . . . any particular item [was used].") Such statutes are indivisible, and the formal categorical approach applies.

Martin argued at sentencing and now on appeal that Tennessee's second degree murder statute is indivisible because it creates a single crime, second degree murder, that can be accomplished by two alternative means: either knowing killing or killing resulting from unlawful distribution of any Schedule I or Schedule II drug, when that drug is the proximate cause of the user's death. The Government maintains that the statute is divisible.

When "authoritative sources of state law," such as state supreme courts, definitively confirm whether a statute is divisible, we "need only follow what [they] say[]." *Mathis*, 579 U.S. at 518. "And if state law fails to provide clear answers," the court can "peek" at certain record documents (indictments and jury instructions among them) "for help in making [the] determination" whether a statutory list "contains means or elements." *Id.* (quoting *Rendon v. Holder*, 782 F.3d 466, 473-74 (9th Cir. 2015)) & n.7. For example, "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* at 519;

*see United States v. Ritchey*, 840 F.3d 310, 320 (6th Cir. 2016) (considering state precedent and pattern jury instructions in means-or-elements analysis).

Turning first to the statute at issue, Tennessee second degree murder is "(1) a knowing killing of another; or (2) a killing of another that results from the unlawful distribution of any Schedule I or Schedule II drug, when the drug is the proximate cause of the death of the user."[1] Tenn. Code § 39-13-210(a) (2008). The statute does not specify whether its subsections are means or elements, but "[t]he 'ordinary use' of the conjunction 'or' is 'almost always disjunctive, that is, the words it connects are to be given separate meanings.'" *United States v. Mitchell*, 743 F.3d 1054, 1065 (6th Cir. 2014) (quoting *United States v. Woods*, 571 U.S. 31, 45 (2013)) (other quotation omitted). Disjunctive phrasing thus tends to "suggest[] two alternative elements." *Id.* at 1066.

The two subsections of § 39-13-210(a) also have different mens rea requirements: the "knowing killing" subsection, 210(a)(1), states the requisite mens rea outright, whereas the "unlawful distribution" subsection, 210(a)(2), is silent on that issue. According to the state Sentencing Commission, the statute "makes clear that the requisite mens rea for second degree murder is the 'knowing' killing of another or that the killing be done recklessly as a result of unlawful distribution of a Schedule I or Schedule II drug." Tenn. Code § 39-13-210 sentencing commission cmt. (2008).

State courts have treated the two subsections as distinct. In one appeal of a second degree murder conviction for a knowing killing, the jury charge explained that, "[f]or [the jury] to find the defendant guilty of this offense, the state must have proven beyond a reasonable doubt the

---

[1] Martin was convicted of attempted second degree murder. A person commits criminal attempt in Tennessee when, in relevant part, he acts "with the kind of culpability otherwise required for the offense." Tenn. Code § 39-12-101(a). Our analysis focuses on the second degree murder statute accordingly.

existence of the following essential *elements*: (1) that the defendant unlawfully killed the alleged victim; and (2) that the defendant acted knowingly." *State v. Page*, 81 S.W.3d 781, 786 (Tenn. Crim. App. 2002) (emphasis added). Reviewing the appeal, the Tennessee Court of Criminal Appeals noted that the two subsections of § 39-13-210(a) have different mens rea requirements and "confine[d] [its] analysis . . . to that form of second degree murder specifying the 'knowing killing of another.'" *Id.* at 787. In another direct appeal of a second degree murder conviction for unlawful distribution, the same court described the state's burden as obtaining a conviction "under Code section 39-13-210(a)(2)"—*not* the second degree murder statute more generally. *State v. Pack*, 421 S.W.3d 629, 639 (Tenn. Crim. App. 2013). *See also State v. Brown*, 311 S.W.3d 422, 431-32 (Tenn. 2010) (defining second degree murder, "[a]s pertinent to [the] case," as § 39-13-210(a)(1) "knowing killing").

Other documents support the conclusion that the statute is divisible. Tennessee's pattern jury instructions for the two subsections differ. *Compare* Tenn. Pattern Jury Instruction – Crim. 7.05(a) (second degree murder due to knowing killing), *with* Tenn. Pattern Jury Instruction – Crim. 7.05(b) (second degree murder due to unlawful distribution of drug). And, although the indictment in Martin's case charges him with violations of § 39-13-210 without citing a specific subsection, each charged count of attempted second degree murder states that he "unlawfully and knowingly attempt[ed]" to kill. That language matches the mens rea of the "knowing killing" subsection and that subsection only.

Each of Martin's arguments to the contrary fails. He first compares the Tennessee second degree murder statute to a Washington second degree murder statute that the Ninth Circuit decided did not qualify as a crime of violence under the elements clause. *See United States v. Vederoff*, 914 F.3d 1238, 1247 (9th Cir. 2019). Not only does the Washington statute have different elements

than the Tennessee one, but also Washington courts had already concluded that the statute in question was indivisible when the *Vederoff* court analyzed it. *Id.* at 1247-48. The two statutes are not comparable. *See United States v. Vanhook*, 640 F.3d 706, 715 (6th Cir. 2011) (finding one statute indivisible does not imply that another "with entirely different elements" should be classified as such).

Martin then suggests that, because Tennessee courts have not definitively ruled on whether the second degree murder statute has alternative means or elements, we should evaluate the second degree murder statute by looking to the first degree murder statute, Tennessee Code § 39-13-202. It is true that the Tennessee Supreme Court has described the first degree murder statute as "encompass[ing] both premeditated murder and felony murder," both of which are "means by which criminal liability for first degree murder may be imposed." *State v. Ely*, 48 S.W.3d 710, 721 (Tenn. 2001). But describing a statute generally is not the same as articulating how it works or how it should be interpreted, and Tennessee courts have treated premeditated and felony murder as having different elements and requiring different mental states.[2] *See id.* at 721. Regardless, whether or not Tennessee's first degree murder state is divisible, a finding of indivisibility as to "one crime" "in no way implies that another crime with entirely different elements and circumstances should likewise be classified as such." *Vanhook*, 640 F.3d at 715.

Finally, Martin claims that Tennessee courts do not require the government to prove, or a jury to find, which of a set of multiple alternative means was used to commit a single crime. The cases he cites in support deal either with convictions for aiding and abetting (a theory of liability,

---

[2] Martin also incorrectly analogizes this case to *Carter v. State* and *State v. Hurley*, both of which concerned the propriety of sentencing someone to death (or even doing so twice) based on a general verdict of guilty of first degree murder without specifying whether the conviction was for premeditated murder or felony murder. *See* 958 S.W.2d 620, 624-25 (Tenn. 1997); 876 S.W.2d 57, 69-70 (Tenn. 1993) ("Both crimes constitute first degree murder. T.C.A. § 39-2-202 provides alternate means by which the offense may be committed. There was only one first-degree murder, and there should be only one punishment.").

not a separate offense), *see State v. Lemacks*, 996 S.W.2d 166, 170-73 (Tenn. 1999); *State v. Wilson*, No. M1999-01848-CCA-R3CD, 1999 WL 1209787, at *5 (Tenn. Crim. App. Dec. 17, 1999), or situations where the state charged and proved at trial multiple variants of the same offense, *State v. Cribbs*, 967 S.W.2d 773, 775, 778 (Tenn. 1998); *Ward v. State*, No. M2011-00122-CCA-R3PC, 2012 WL 1417287, at *21 (Tenn. Crim. App. Apr. 20, 2012). In sum, Martin's theory is not supported by caselaw.

Taking as a whole the statute's construction, Tennessee state caselaw, the pattern jury instructions, and the indictment in this case, we conclude that the Tennessee second degree murder statute is divisible. *See United States v. Jackson*, No. 20-5769, 2021 WL 7909375, at *2 (6th Cir. Mar. 30, 2021) (finding same).

### 2. The Modified Categorical Approach

Because the statute is divisible, the modified categorical approach applies, and the panel may look at a "limited class of documents . . . to determine which alternative [element] formed the basis of the defendant's prior conviction[.]" *Braden v. United States*, 817 F.3d 926, 932 (6th Cir. 2016) (quoting *United States v. Denson*, 728 F.3d 603, 608 (6th Cir. 2013)). This class includes charging documents and judgments. *Shepard v. United States*, 544 U.S. 13, 16 (2005); *see United States v. Cooper*, 739 F.3d 873, 881 (6th Cir. 2014).

The indictment charged Martin with violations of § 39-13-210 generally, without mentioning a specific subsection, but the language of each charged count of attempted second degree murder matches the mens rea of the statute's "knowing killing" subsection, 210(a)(1). The indictment does not mention any of the elements required to indict a defendant under the "unlawful distribution" subsection, 210(a)(2). Based on the indictment, the sentencing court correctly

concluded that Martin was convicted under the "knowing killing" subsection of the second degree murder statute.

In fact, Martin's attorney conceded this point at sentencing:

THE COURT: [I]f the Court concludes that the applicable second degree murder statute is divisible, does Mr. Martin agree that the approved *Shepard* documents here, the Indictment and the Judgment, show that he was convicted of second degree murder under the knowing killing section of the statute, not the distribution of a drug section?

MARTIN'S COUNSEL: Yeah, I think that by – I don't have any dispute with that because I have read those documents, too[.] . . . And they do say I believe it's . . . intentional or knowingly[.]

THE COURT: Knowingly.

MARTIN'S COUNSEL: Yeah, it's not drug distribution.

Martin's "attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990); *see United States v. Aparco-Centeno*, 280 F.3d 1084, 1087-88 (6th Cir. 2002). Martin has waived any argument that the *Shepard* documents do not sufficiently show which subsection of the statute he was convicted of violating. *See United States v. Mabee*, 765 F.3d 666, 671 (6th Cir. 2014).

The remaining question is whether attempting a knowing killing of another "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a)(1). "Physical force" is "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010); *see Knight v. United States*, 936 F.3d 495, 499 (6th Cir. 2019) (applying *Johnson* definition in an ACCA context). Relatively "minor" uses of force, such as "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling," may suffice. *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019) (quoting *United States v. Castleman*, 572 U.S. 157, 182 (2014) (Scalia, J., concurring in part)). And "the knowing or

intentional causation of bodily injury necessarily involves the use of physical force. . . . [A] 'bodily injury' must result from 'physical force.'" *Castleman*, 572 U.S. at 169-70.

The Sixth Circuit has not yet addressed in a published opinion whether attempted murder—specifically, an attempted knowing killing—is a crime of violence under the Guidelines' elements clause. *See Jackson*, 2021 WL 7909375, at *2 (unpublished opinion finding that facilitation of "knowing killing" variant of second degree murder in Tennessee was categorically a crime of violence). Every circuit to consider the issue has concluded that it is. *See United States v. Báez-Martínez*, 950 F.3d 119, 132 (1st Cir. 2020) (because "death is the ultimate injury," murder requires violent force, and "if murder requires violent force because death results, then attempted murder does, too, because the defendant attempted to reach that result"); *Hill v. United States*, 877 F.3d 717, 720 (7th Cir. 2017) (finding attempted murder under Illinois law a categorically violent felony); *United States v. Peeples*, 879 F.3d 282, 287 (8th Cir. 2018) ("Because it is impossible to cause bodily injury without force, it would also be impossible to cause death without force. Thus, an attempt to cause death would also require the use or attempted use of force."); *United States v. Sanchez*, 940 F.3d 526, 534-35 (11th Cir. 2019) (evaluating New York's second degree murder statute and finding that knowing causation of death "necessarily involves the use of physical force because it is impossible to cause death without applying force that is capable of causing pain or physical injury"). *Accord United States v. Studhorse*, 883 F.3d 1198, 1204-06 (9th Cir. 2018) (analyzing Washington's attempted first degree murder statute, which requires that a defendant have taken "a substantial step in causing another's person's death with the intent to cause that person's death"). In a similar vein, a Sixth Circuit panel recently found that, under Kentucky law, "[c]omplicity to commit murder always requires the use of physical force, because . . . in every murder, the murderer uses physical force in some way to cause a death." *United States v. Harrison*,

54 F.4th 884, 889 (6th Cir. 2022); *see id.* at 890 (citing *Báez-Martínez* and *Peeples* among other cases in support).

At sentencing, Martin conceded that attempting the knowing killing of another has as an element the attempted use of physical force against the person of another:

> THE COURT: And you would agree with me that if it is divisible and we're looking at just the knowing killing, the knowing killing of another person would practically require some use of force or attempted use of force.
>
> MARTIN'S COUNSEL: Well, I don't think I can make a reasonable argument that it would not. Yeah, I think it would have to apply. It would have to have some kind of knowing use of force in that particular stretch.

And in his reply brief, he acknowledges that the caselaw supports the Government's argument.

Martin's primary argument is that, although courts may previously have found attempted murder to be a crime of violence, almost all of the Government's cited caselaw predates *United States v. Taylor*, 142 S. Ct. 2015 (2022). He calls that case a "game changer" that prohibits the panel from reaching the same conclusion as other circuits did before.

In *Taylor*, the Supreme Court held that attempted Hobbs Act robbery does not qualify as a crime of violence under the ACCA's elements clause. *Id.* at 2020. Justice Gorsuch explained "that to win a case for attempted Hobbs Act robbery the government must prove two things: (1) The defendant intended to unlawfully take or obtain personal property by means of actual or threatened force, and (2) he completed a 'substantial step' toward that end." *Id.* (emphasis omitted). The Court concluded that, "whatever a substantial step [toward the completion of a Hobbs Act robbery] requires, it does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* In response to the argument that, because completed Hobbs Act robbery qualifies as a crime of violence, so should attempted Hobbs Act robbery, the Court explained:

> The elements clause does not ask whether the defendant committed a crime of violence *or* attempted to commit one. It asks whether the defendant *did* commit a crime of violence—and it proceeds to define a crime of violence as a felony that includes as an element the use, attempted use, or threatened use of force. If Congress had wanted the elements clause to do the kind of work the government supposes, it could have easily said so. For example, it might have swept in those federal crimes that require as an element "the use or threatened use of force" *and* those "that constitute an attempt to commit an offense that has such an element." But that simply is not the law we have.

*Id.* at 2022. The "problem" was that "no element of attempted Hobbs Act robbery requires the government to prove beyond a reasonable doubt that the defendant used, attempted to use, or even threatened to use force. Individuals . . . who are arrested before they can threaten anyone may be convicted too." *Id.* (emphasis omitted).

*Taylor* does not change the outcome here. A completed Hobbs Act robbery does not require the use or attempted use of force; it can be committed by threat of force alone. *Id.* at 2020. So the elements clause does not encompass attempted Hobbs Act robbery: "[a]lthough the elements clause covers the use of force, the attempt to use force, and the threat to use force, it does not cover *attempts to threaten* the use of force." *Alvarado-Linares v. United States*, 44 F.4th 1334, 1346 (11th Cir. 2022). But murder *does* require the use of force, and "[b]ecause the completed crime of murder has as an element the use of force, the *attempt* to commit murder has as an element the attempted use of force." *Id.* at 1347 (distinguishing *Taylor*); *see United States v. Taylor*, 979 F.3d 203, 209 (4th Cir. 2020), *aff'd*, 142 S. Ct. 2015 (2022) ("[W]here a crime of violence *requires* the use of physical force . . . the corresponding attempt to commit that crime necessarily involves the attempted use of force.").

Martin's only rejoinder is that *Taylor*'s holding extends to *all* attempt crimes, not just attempted Hobbs Act robbery, based on how broadly the opinion discusses the elements clause. All *Taylor* does is articulate how courts should conduct the elements clause analysis: the question

is not whether the accused attempted to commit a crime of violence but whether the *crime of conviction* itself—whether completed or an attempt—is a crime of violence. *See* 142 S. Ct. at 2022. Here, it is. Because Martin's attempted second degree murder conviction was for a crime of violence, his classification as a career offender was correct.

### B.     The Sentence's Reasonableness

Martin also challenges the reasonableness of his sentence, charging the district court with "thr[owing] out his guidelines range" because the sentencing judge stated that it would impose a 151-month term of imprisonment "even if Mr. Martin's advisory guideline range had not included the 4B1.1 enhancement . . . given Mr. Martin's conduct, serious criminal history, and the danger that he presents to this community." According to Martin, the district court failed to explain why such a significant variance would be appropriate, and the explanation it did provide heavily weighed Martin's criminal history, a factor the Guidelines already consider.

Martin's hypothetical assumes the career offender classification was improper. The district court did not impose a variance; it sentenced him at the lowest end of the applicable Guidelines range. *See United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007) (within-Guidelines sentences presumed substantively reasonable). And, after hearing from both Martin and the Government, the district court considered each of the 18 U.S.C. § 3553(a) factors. To the extent that Martin challenges the imposition of a variance, we decline to address that argument because there was no variance; Martin was sentenced within the Guidelines range based on his career offender status.

### III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** Martin's sentence.